[No. B002537. Second Dist., Div. One. Oct. 1, 1984.]

ISLAMIC REPUBLIC OF IRAN, Plaintiff and Appellant, v.
SHAMS PAHLAVI, Defendant and Respondent.

COUNSEL

Atkinson, Andelson, Loya, Ruud & Romo, Thomas W. Kovacich, O'Dwyer & Bernstein, James T. Winkler and Patricia Stearns Eyres for Plaintiff and Appellant.

McCutchen, Black, Verleger & Shea, Steven W. Weston and Susan J. Triplett for Defendant and Respondent.

OPINION

**LEETHAM, J.**\*—The lawsuit in the present action, filed June 30, 1981, apparently came in the wake of a great social upheaval in the country of Iran during which the Shah of Iran fled around January 16, 1979. The complaint filed on behalf of the present government of Iran, alleges a series of rather conclusionary malefactions and conspiracies, and modestly asks for damages in the amount of $3 billion together with exemplary damages in the amount of $10 million. Interestingly enough, one of the codefendants, IERSPEX FINANCE N.V., admitting the complaint allegation that it is a Netherlands Antilles Corporation but denying that it does business in Los Angeles County, California, filed an answer to the complaint on August 27, 1982. Apparently, no further proceedings have taken place with respect to the parties plaintiff and defendant IERSPEX FINANCE N.V., and its status is not part of the present appeal.

After unsuccessfully attempting personal service of summons and complaint upon the defendant SHAMS PAHLAVI, aka H.I.H. PRINCESS SHAMS PAHLAVI, as designated in the complaint (and hereinafter referred to as PAHLAVI), the plaintiff obtained an ex parte order in the superior court for substituted service of process by publication. On April 22, 1982, on behalf of the defendant PAHLAVI was filed a document in the proceedings indicating a special appearance was being made "to quash service of summons for lack of personal jurisdiction," and at the same time notice was given of a motion "for limited discovery re jurisdiction," reciting in the heading of the document *"Special Appearance Only."* A series of legal maneuvers commenced at this stage by counsel on behalf of the respective parties, not only at the trial court level but by writ petition to the Court of Appeal and the California Supreme Court; which adroit proceedings have little except historic significance at this stage. Defendant PAHLAVI posed a motion to dismiss the plaintiff's complaint on January 14, 1983, which was heard in conjunction with the previously filed motion to quash service of summons by the

---

\*Assigned by the Chairperson of the Judicial Council.

trial court on May 20, 1983. The matter having been submitted, was determined by the trial court on May 24, 1983, with the issuance of the following terse order: "Motion of Defendant Pahlavi to quash summons and motion for [*sic*] dismissing the action with prejudice is granted on all grounds stated therein. Sanctions and costs are granted as prayed." On June 7, 1983, the trial court signed and filed a judgment in sequel to the May 24, 1983, decision including the following language: "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

"1. The Order for Publication of Summons or Citation issued herein on December 3, 1981, is hereby vacated;

"2. The attempted service of process pursuant to said Order, being void and invalid *ab initio,* is hereby quashed;

"3. The complaint on file herein shall be, and is hereby, dismissed with prejudice as to defendant Shams Pahlavi; and

"4. Defendant Shams Pahlavi shall have and recover from plaintiff, the Islamic Republic of Iran, her costs of suit herein. . . ." Interestingly enough, plaintiff filed a notice of appeal on June 30, 1983, not from the judgment of June 7, 1983, but from the trial court's minute order of May 24, 1983.

## ISSUES

The briefs on behalf of the two parties here leave us somewhat perplexed as to what are thought to be the issues to be resolved. After a careful review of the record and the presentations made from time to time in the trial court (the clerk's transcript consists of 1,975 pages), it would seem that the points in controversy should be as follows:

A. Do the Algerian Accords between the United States and the Islamic Republic of Iran place the present lawsuit in a special category of litigation, exempted from the usual jurisdictional requirements?

B. Were the requirements of the California law fulfilled in this case with respect to substituted service of process?

C. Was the trial court justified in vacating the order for publication made by Commissioner John R. Alexander on December 3, 1981?

D. Was the appearance of the defendant and respondent PAHLAVI in this cause of a general significance, precluding a quashing by the trial court of service of summons?

E. Was the trial court justified in dismissing *with prejudice* the plaintiff's action against the defendant PAHLAVI?

F. Was the pattern of sanctions and costs levied against the plaintiff by the trial court justified?

## DISCUSSION

There is initially a technical problem: The plaintiff's appeal purports to have been taken from the trial court's minute order of May 24, 1983. A judgment was signed and filed, in conformity with the May 24, 1983, minute order on June 7, 1983. We shall assume that plaintiff's appellate designation inadvertently omitted the latter document and shall treat the appeal as involving both documents.

The evidentiary posture of the Algerian Accords, which were developed between the United States and the Islamic Republic of Iran is somewhat obscure. Nevertheless, the provisions of the Algerian Accords are carried in the appendix to appellant's brief and are, as such, fully commented upon in respondent PAHLAVI's brief.

■ The Algerian Accords carry no language with respect to the affirmative duties of American state courts as to litigation about Iranian assets. So, we are not concerned with the impact of federal treaty power on the jurisdiction of a state court or the operation of local legislation or rules as to status. We can assume without deciding that the language of paragraph 14 in the General Declaration of the Algerian Accords, where it speaks of "United States courts," includes state courts as well as federal courts. The provision simply states that the "claims of Iran should not be barred either by sovereign immunity principles or by the act of state doctrine." The situation of this lawsuit involving the present two parties has never reached the state where affirmative defenses of the defendant PAHLAVI are even a factor of consideration. A rather telling summary of the legal situation in the light of the Algerian Accords is contained at page 25 of *appellant's* opening brief: "The return of the assets of the former royal family was from the very beginning a fundamental demand of the Iranian government. The position of the United States government was equally clear: it would not, indeed could not, commit itself to a summary seizure of property in the United States from any member of the former royal family. The only way such assets could be returned was pursuant to an adjudication by a U. S. court in accordance with due process of law." Presumably, we could also add that any parties before an American court are constitutionally entitled to the equal protection of our laws. Succinctly put, each litigant before our courts may be expected to comply with the same standards required of

any other litigant. The basic question here, then, is not one of exclusion of a litigant, but whether or not the plaintiff and appellant placed itself under our legislation and rules in a position of having accomplished service of process on the defendant and respondent PAHLAVI. We hold that there is no special category of Iranian litigant. In this connection, we can only hope that an American judge assigned to a matter such as the present may fare better than a Swedish judge.[1]

■ The plaintiff urges that summons was properly served on the defendant PAHLAVI in this action by the substituted method of publication. The requirements for this form of service are set out in section 415.50 of the Code of Civil Procedure.[2] From the evidence and showings made before

---

[1]An article appearing in the Los Angeles Times on September 7, 1984, was to the following effect: "Iranian at Claims Tribunal Threatens to Kill Swedish Judge

"THE HAGUE (UPI)—An Iranian judge threatened to kill a Swedish jurist Thursday at the international tribunal that is handling claims arising from the 1979 Iranian takeover of the U.S. Embassy in Tehran, diplomats said.

"They said the threat came after Iranian judge Mahmoud M. Kashani refused to apologize for physically assaulting Swedish judge Nils Mangard on Monday.

"'If Mangard ever dares to enter the tribunal chamber again; either his corpse or my corpse will leave it rolling down the stairs,' Kashani said Thursday, according to the diplomats and tribunal officials.

"Kashani and another Iranian colleague, Judge Shafi Shafie grabbed Mangard by the collar, twisted his arm behind his back and began beating him up during Monday's session of the tribunal.

"Mangard was not seriously hurt in the incident, which a U.S. spokesman called 'simply shocking.'

"Tribunal President Gunnar Lagergren, one of the Swedish judges, issued a letter Thursday that suspended all tribunal proceedings—six sessions due to begin late next week—until further notice.

"Iranian officials acknowledged that Monday's incident took place but declined to give further details.

"Diplomats said the Iranian delegation two years ago filed an official complaint with the International Court of Justice—which set up the tribunal—charging that Mangard was not objective.

"The international tribunal, one of the few places where U.S. and Iranian officials come into direct contact on a regular basis, was set up in 1981 under an accord signed in Algiers to free the U.S. hostages held for 444 days at the U.S. Embassy in Tehran. It is composed of three U.S. judges, three Iranian judges, two Swedish judges and a Dutch judge."

[2]The provisions of the subject statute are as follows: "§ 415.50 (a) A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that:

"(1) A cause of action exists against the party upon whom service is to be made or he is a necessary or proper party to the action; or

"(2) The party to be served has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action consists wholly or in part in excluding such party from any interest in such property.

"(b) The court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served and direct that a copy of the summons and of the complaint be forthwith mailed to such party if his address is ascertained before expiration of the time prescribed for publication of summons. Except as otherwise provided by statute, the publication shall be made as provided by Section 6064

the trial court, as well as the inference from contentions made here, it is obvious that we are not concerned with subdivisions (b), (c), (d) and (a)(2). Did the plaintiff fulfill the requirements of subdivision (a) and subdivision (a)(1)? Although there could be some challenge considered with respect to the "reasonable diligence" exercised in attempted service under subdivision (a), (*Donel, Inc.* v. *Badalian* (1978) 87 Cal.App.3d 327 [150 Cal.Rptr. 855]), on the whole it appears that the trial court commissioner acted in this regard within his discretion in signing the order for publication dated December 3, 1981. The remaining fundamental question, under subdivision (a)(1), is whether "upon affidavit it appears to the satisfaction of the court . . . that . . . . A cause of action exists against the party upon whom service is to be made . . . ."

On December 3, 1981, it is recited in the order for publication prepared by plaintiff's counsel and signed by the trial court commissioner that the complaint has been read as well as the declarations of Phyllis Bennis, Brian O'Dwyer and Robert Kennedy, and that the defendant PAHLAVI cannot be "served with reasonable diligence." The order further recites that "it also appearing from the Declaration of Mohammed T. Sadeghi that a good cause of action exists in this action in favor of the plaintiff . . . and against the defendant" (PAHLAVI) and that service of summons may be made upon said defendant by publication. Initially, it is obvious that the complaint was asserted to have been read on the "reasonable diligence" question alone. If for a wider purpose, the Sadeghi verification of the complaint would seem clearly insufficient. The notary public area is blank. There has been no compliance with Code of Civil Procedure section 2015.5, subdivision (b). The rubber stamp mark of the Embassy of Algeria in Washington, purports to authenticate nothing in particular. Probably because of the verification shortcomings, the words in the order for publication, "verified complaint or petition" have been lined out and a superscription "Declaration of Mohammed T. Sadeghi" inserted, followed by the initials T. W. K. (presumably one of *plaintiff's* counsel). The "Affidavit" of Mohammed T. Sadeghi, probably qualifies as a declaration under Code of Civil Procedure section 2015.5, subdivision (b). However, its contents are a medley of conclusions and political declamation and certainly fails to formulate a comprehensible cause of action. It is dubious whether it would qualify for its expressed purpose if the true test of sufficiency " ' ' "is whether it has been drawn in such a manner that perjury could be charged thereon if any material alle-

---

of the Government Code unless the court in its discretion orders publication for a longer period.

"(c) Service of summons in this manner is deemed complete as provided in Section 6064 of the Government Code.

"(d) Notwithstanding an order for publication of the summons, a summons may be served in another manner authorized by this chapter, in which event such service shall supersede any published summons."

gation contained therein is false."'" (*Tri-State Mfg. Co.* v. *Superior Court* (1964) 224 Cal.App.2d 442, 445 [36 Cal.Rptr. 750].)

In the present situation, the ruling of the trial judge on May 24, 1983, was based upon additional information *not disclosed at the time the publication order was obtained on December 3, 1981.* Apparently, from his later-taken deposition, the declarant Sadeghi was in school in Texas between 1973 and 1979, and after spending a few months in 1979 within Iran after the Shah's departure, returned to the United States, remaining until April of 1982. There is no indication that on May 24, 1983, or at any earlier date Mr. Sadeghi could have been designated as a witness in this cause for any purpose other than the formal identification of documents, the contents of which so far presented are of highly speculative admissibility. ■ "For the purpose of service by publication, the existence of a cause of action is a jurisdictional fact." (*Harris* v. *Cavasso* (1977) 68 Cal.App.3d 723, 726 [137 Cal.Rptr. 410].) ■ It is rather apparent that jurisdictional facts were missing from this case on December 3, 1981, and by May 24, 1983, it was pellucidly clear that they had been missing from the beginning. It is not enough that the verifying and declaring witness' familiarity with the facts in an application for a substituted service order be based upon what is termed "common knowledge of the Iranian people." Even the translated documents from Iran appear to give no support to a cause of action. ■ California law has long authorized the setting aside of a publication order where fraud or lack of jurisdictional facts are apparent from an examination of the affidavit for publication. (*Narum* v. *Cheatham* (1932) 127 Cal.App. 505, 507 [15 P.2d 1106].)

■ A contention is made that the defendant PAHLAVI, in posing the motion to quash in this case, in taking the deposition of Mohammed T. Sadeghi, in posing interrogatories and in examining certain of plaintiff's documents actually made a general appearance. As noted in the case cited by plaintiff-appellant, the determination of when a party has made a special appearance depends on a number of circumstances and is a judicial determination. (*1880 Corp.* v. *Superior Court* (1962) 57 Cal.2d 840, 843 [22 Cal.Rptr. 209, 371 P.2d 985].) It appears that there was adequate ground for the learned trial judge in this case to implicitly determine that the appearance of defendant PAHLAVI was special.

■ ■ The trial court may properly exercise its power of sanctions and other forms of coercion to prevent an abuse of process. (Code Civ. Proc., § 2034; *Neal* v. *Bank of America* (1949) 93 Cal.App.2d 678 [209 P.2d 825]; *Taliaferro* v. *Prettner* (1955) 135 Cal.App.2d 157 [286 P.2d 977].) ■ We feel that the costs and sanctions imposed were basically reasonable and justified under the circumstances (*Pritchard* v. *Southern Pa-*

*cific Co.* (1935) 9 Cal.App.2d 704 [51 P.2d 428]; *In re Marriage of Lemen* (1980) 113 Cal.App.3d 769 [170 Cal.Rptr. 642].) ██ Were the matter completely at issue, failure to comply under Code of Civil Procedure section 2034 might justify dismissal of the action. In the present posture of the case, however, the parties have cited us to no applicable case law on the point and we have found none by independent research. Where the moving defendant has specially appeared and achieved the essential purpose of quashing the service of summons by publication, can the ultimate sanction of dismissal of the action itself be imposed? Logically, it would seem not because presently the defendant PAHLAVI (except for the collection of costs and financial sanctions) is now completely removed from plaintiff's action. The discovery actually obtained was sufficient for the defendant's purpose and the fact that some proper discovery has been frustrated is of little consequence. In a general appearance situation on the contrary, dismissal of an action may be the only adequate relief. Accordingly, from the minute order of May 24, 1983, the superior court is ordered to strike the phrase "and motion *for* [*sic*] dismissing the action with prejudice;" from the judgment of June 7, 1983, there will be stricken the phrase "The complaint on file herein shall be, and is hereby, dismissed with prejudice as to defendant Shams Pahlavi." The actions of the trial court in all other particulars are affirmed.

Hanson (Thaxton), Acting P. J., and Dalsimer, J., concurred.