[No. B151542. Second Dist., Div. Four. June 21, 2002.]

MARLA HARDING, Plaintiff and Appellant, v.
MICHAEL S. HARDING, Defendant and Respondent.

**COUNSEL**

Barry P. King for Plaintiff and Appellant.

Trope & Trope and Thomas Paine Dunlap for Defendant and Respondent.

**OPINION**

**HASTINGS, J.**—The trial court dismissed Marla Harding's request for order to show cause for modification of a Texas child support order because it lacked subject matter jurisdiction pursuant to the federal Full Faith and Credit for Child Support Orders Act (FFCCSOA), title 28 United States Code section 1738B (section 1738B), and the complementary state statute, the California Uniform Interstate Family Support Act (Fam. Code, § 4900 et seq.) She argues that the FFCCSOA and the state law are unconstitutional because they infringe upon what is traditionally a local issue. She also argues there is insufficient evidence that respondent remains a Texas resident for either law to apply and preclude the court from having jurisdiction. We conclude there is no constitutional infirmity and that sufficient evidence supports the trial court determination that respondent is a Texas resident. We accordingly affirm.

### FACTS

Appellant and respondent were divorced in Texas in 1994 and appellant was awarded child support for the parties' two children. Appellant and the children later moved to California. Respondent claimed his residence remained in Texas, although he also has a residence in Missouri, his place of employment.

On July 19, 2000, appellant filed a statement for registration of foreign support order in the Los Angeles County Superior Court. In her declaration in support of the statement, appellant declared that respondent's last known residence was in Texas. In August 2000, appellant filed a motion for modification of child support.

On October 5, respondent moved "To QUASH AND STRIKE PETITIONER'S MOTION FOR MODIFICATION OF CHILD SUPPORT . . ." with the notation that

he was making a "SPECIAL APPEARANCE." In support of the motion, respondent declared in writing, "I have been a resident of Texas continuously since 1991. I am registered to vote in Texas, I own a car in Texas, my car is registered in Texas, I own a home in Texas, I pay property taxes in Texas, and have not had a primary residence other than in Texas since I moved to Texas from New Jersey in 1991. All of my child and spousal support obligations have been timely paid through a Texas Wage Assignment Order." Respondent further declared that aside from his children's and his former spouse's presence in California, respondent has no connections with California. In addition, respondent declared that he has a teenage daughter from a prior marriage who has lived with him in Texas for approximately six years, he has a fiancée who lives in Texas with him, and all evidence of his income and expenses, as well as his ability to pay support, is in Texas or at the Missouri headquarters of his employer.

He also filed a declaration from Tina Mueller, his employer's senior relocation coordinator. The declaration states that the employer provided "relocation services" to employees transferred to jobs increasing their commutes by 50 miles, and the term "relocation" refers to an employee's relocation to a different or new position with the employer. Mueller declared that respondent's employer's records reflect that his address is in Texas, and that respondent used the company relocation services to buy a condominium in Missouri "for his use while in Missouri. Respondent did not utilize Relocation Services to sell his residence in Texas."

On October 20, 2000, respondent filed a response to appellant's original motion to modify and termed it a "special appearance." He checked off the portion of the form stating he did not consent to the order requested, and wrote, "The Court does not have jurisdiction to modify the Texas Order."

On November 7, the trial court granted appellant's request to conduct discovery on the issue of respondent's place of residence.

Respondent also propounded discovery but limited it to the issue of his residence which was the key determination in connection with the issue of jurisdiction.

On April 17, 2001, the trial court determined that respondent resides in Texas, and not Missouri, as contended by appellant. The court found that respondent "did not make a general appearance in this matter. All responsive papers filed on behalf of the Respondent are marked 'special appearance'. There is no authority to support Petitioner's contention that the propounding of discovery about the jurisdictional issues in this case will constitute a

general appearance." Because the court found that the parties' older child was conceived in California, the court found sufficient contact between respondent and the state to confer personal jurisdiction over respondent. The court concluded that it therefore "may exercise jurisdiction to modify the child support order issued by the State of Texas only as to the child who was conceived in this state." The court then set the matter for a status conference for the purpose of setting a hearing on appellant's motion to modify support.

Respondent filed a notice of intention to move for a new trial and/or to vacate the trial court's April 17 order.

On May 17, 2001, after hearing argument on the motion for new trial, the trial court reversed itself. It concluded that respondent is a Texas resident registered to vote in Texas, has a Texas driver's license, owns a car which is registered in Texas, pays property taxes in Texas, has a teenager from a prior marriage who lives with him in Texas, has a fiancée who lives with him in Texas and has an EZ Tag account in Texas. It also noted that respondent's child and spousal support obligations were paid through a Texas wage assignment order, and respondent's payroll and bank statements and many of his credit card statements were sent to respondent's Texas address. It concluded that "the above-referenced facts sufficiently support Respondent's contention that he lives in Texas, notwithstanding that he spends time outside of the State of Texas, owns property in Missouri, and has an office in Missouri." Based on these findings, it concluded it lacked subject matter jurisdiction under 28 United States Code section 1738B and under California Family Code section 4960 et seq. It entered an order granting respondent's motion for a new trial, vacated the portion of its April 17, 2001 order finding that the court had subject matter jurisdiction to modify the parties' Texas child support order, and dismissed appellant's motion to modify child support.

## DISCUSSION

■■■ The main issue here is the constitutionality of the FFCCSOA, which we now address.

Section 1738B(a)(2) sets forth the general rule that each state shall enforce other states' child support orders, and "shall not seek or make a modification of such an order except in accordance with subsections (e), (f), and (i)."

Section 1738B(e) authorizes a state court to modify another state's child support order if "(1) the court has jurisdiction to make such a child support

order pursuant to subsection (i); and [¶] (2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or [¶] (B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order."

Section 1738B(f), as applicable, provides: "(1) If only 1 court has issued a child support order, the order of that court must be recognized."

Section 1738B(i) provides: "If there is no individual contestant or child residing in the issuing State, the party . . . seeking to modify . . . a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification."

Also relevant is section 1738B(d), which concerns continuing jurisdiction. This subdivision states: "A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is . . . *the residence* of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order." (Italics added.)

As appellant notes, Congress declared in 1994 that it was enacting section 1738B to deal with the lack of uniformity of child support laws from different states. Appellant quotes an excerpt from the congressional findings that the nonuniform laws, among other things, encouraged noncustodial parents to relocate from the states where the original support orders were made, placing a burden on interstate travel and communication and the custodial parent which is "time consuming, and disruptive of occupations and commercial activity" and results in "inequities in child support payment[s] levels that are based solely on the noncustodial parent's choice of residence." Appellant argues that the FFCCSOA does not consider the contingency here, where the minor children and custodial parent move from the state where the child support order was originally issued and contends that "[w]isdom, therefore, dictates that consideration of these matters should be *local* rather than national; and, indeed, the more local . . . the better." Appellant further maintains that the FFCCSOA's "failure . . . to distinguish between the different circumstances that arise when the *obligor* and the *obligee* leave the state where the order was originally entered" "creates such a manifest injustice that it cannot withstand constitutional scrutiny."

Acknowledging that the constitutionality of the FFCCSOA was upheld in *Kilroy v. Superior Court* (1997) 54 Cal.App.4th 793 [63 Cal.Rptr.2d 390]

and *Paton v. Brill* (1995) 104 Ohio App.3d 826 [663 N.E.2d 421], appellant argues these cases should not be followed in light of the more recent decision of *United States v. Morrison* (2000) 529 U.S. 598 [120 S.Ct. 1740, 146 L.Ed.2d 658].

Relying on *United States v. Lopez* (1995) 514 U.S. 549 [115 S.Ct. 1624, 131 L.Ed.2d 626], *Morrison* upheld a federal appellate court judgment striking down a federal statute as unconstitutional. (*United States v. Morrison, supra*, 529 U.S. at pp. 601-602 [120 S.Ct. at pp. 1745-1746].) In *Morrison*, a female student at Virginia Polytechnic Institute sued two male students in federal district court, alleging that their assault and repeated rape of her violated 42 United States Code section 13981, part of the Violence Against Women Act of 1994. (*Morrison*, at pp. 604-605 [120 S.Ct. at pp. 1746-1747].) The district court dismissed the female student's complaint on the ground that Congress lacked authority to enact section 13981 under either the commerce clause of the United States Constitution or section 5 of the Fourteenth Amendment. (*Morrison*, at pp. 604-605 [120 S.Ct. at pp. 1746-1747].) The court of appeals upheld the district court's conclusion that Congress lacked constitutional authority to enact the civil remedy of section 13981. (*Morrison*, at p. 605 [120 S.Ct. at p. 1747].)

The United States Supreme Court explained that "we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." (*United States v. Morrison, supra*, 529 U.S. at p. 607 [120 S.Ct. at p. 1748].) The court adopted the following holding from *Lopez*: " 'Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained.' [Citation.]" (*Id.* at p. 610 [120 S.Ct. at p. 1750].) "*Lopez*'s review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor." (*Id.* at p. 611 [120 S.Ct. at p. 1750].) Accordingly, since gender-motivated crimes of violence "are not, in any sense of the phrase, economic activity," 42 United States Code section 13981 was not justified under the commerce clause. (*Morrison*, at p. 613 [120 S.Ct. at p. 1751].)

The *Morrison* court further held that the statute at issue there could not be considered a constitutional exercise of Congress's remedial power under section 5 of the Fourteenth Amendment. (*United States v. Morrison, supra*, 529 U.S. at p. 627 [120 S.Ct at p. 1759].) It explained that section 5 authorizes Congress to "enforce" by "appropriate legislation" the constitutional guarantee against state deprivation of a person's " ' "life, liberty, or property, without due process of law" ' " and against the denial of a person's

" ' "equal protection of the laws." ' " (*Morrison*, at p. 619 [120 S.Ct. at p. 1755].) The court pointed out that 42 United States Code section 13981 "is not aimed at proscribing discrimination by officials which the Fourteenth Amendment might not itself proscribe; it is directed not at any State or state actor, but at individuals who have committed criminal acts motivated by gender bias." (*Morrison*, at p. 626 [120 S.Ct. at p. 1758].) Accordingly, "Congress' power under § 5 does not extend to the enactment of § 13981." (*Id.* at p. 627 [120 S.Ct. at p. 1759].)

*Lopez* held that Congress exceeded its authority to regulate commerce in enacting the Gun-Free School Zones Act of 1990, 18 United States Code section 922(q)(1)(A). This statute "made it a federal offense 'for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.' [Citation.] The Act neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce." (*United States v. Lopez, supra*, 514 U.S. at p. 551 [115 S.Ct. at p. 1626].) "Section 922(q) is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms. Section 922(q) is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." (*Id.* at p. 561 [115 S.Ct. at pp. 1630-1631], fn. omitted.)

Unlike the FFCCSOA, the federal law at issue in *Morrison* concerned a gender-motivated crime between people in the same state, and thus clearly did not involve commerce across state lines. In contrast, the FFCCSOA concerns child support payments ordered in one state and sent to another state; therefore, by its very nature it concerns a regulated activity which substantially affects interstate commerce.

We agree with respondent that *Kilroy* is on point. The respondent there sought to restrain the California trial court from proceeding with a hearing on an order to show cause concerning a potential modification of a Georgia child support decree. (*Kilroy v. Superior Court, supra*, 54 Cal.App.4th at p. 797.) The appellate court agreed with the respondent that the trial court lacked jurisdiction to modify the out-of-state support order because of the FFCCSOA. (*Ibid.*) The respondent's former spouse, who sought to modify the child support order in California, argued that the FFCCSOA is unconstitutional "because it cannot be sustained as a congressional regulation of

interstate commerce and it is an improper federal command to state government." (*Id.* at p. 808.) In contrast to the facts in *Lopez*, the *Kilroy* court held that "[s]upport payments between parents in different states substantially affects interstate commerce. To begin with, such regular transfers of money between residents for purposes of supporting children in different states involves *interstate* commerce. . . . [¶] Further, we conclude child support payments is economic activity which *substantially* affects interstate commerce." (*Id.* at p. 809, italics in original.) "In enacting the Full Faith and Credit for Child Support Act, the Congress found that the lack of uniformity caused the following impacts: noncustodial parents were thereby encouraged to move to another state; the movement of noncustodial parents increased interstate travel and communication that was necessary to secure enforcement of child support orders; the increased time and expenses involved in securing enforcement of support orders were disruptive of occupations and commercial activity; the movement of noncustodial parents to a new state has resulted in massive arrearages nationwide; there was an ongoing avoidance of child support obligations by noncustodial parents; there was the resulting excessive relitigation of child support orders; the excessive relitigation resulted in conflicting orders, confusion, a waste of judicial resources, and loss of public confidence in the courts; the deprivation of liberty and property without due process of law; and burdens on commerce among the states. [Citation.]" (*Id.* at p. 811, fn. omitted.)

Like appellant, the ex-wife in *Kilroy* argued that the FFCCSOA violates the Tenth Amendment of the United States Constitution. (*Kilroy v. Superior Court, supra,* 54 Cal.App.4th at p. 813.) "The Tenth Amendment of the United States Constitution states, 'The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.' At the outset, we note that the United States Supreme Court has only invalidated federal laws because they are invasive of reserved state powers on the rarest of occasions." (*Ibid.*) "[U]nder the supremacy clause . . . , insofar as the Full Faith and Credit for Child Support Orders Act requires California to give deference to the Georgia order, there is no violation of the Tenth Amendment. This we conclude is particularly true given the fact that the authority to adopt general laws which enforce full faith and credit of state court judgments is a specified power of the Congress." (*Id.* at p. 816.) "Because the limitation on state court jurisdiction is clear, the supremacy clause permitted the Congress to adopt the Full Faith and Credit for Child Support Orders Act. This is so even though 28 United States Code section 1738B preempts state court jurisdiction to modify interstate child support orders." (*Id.* at pp. 818-819.) We agree with this analysis, and accordingly reject appellant's challenge of the FFCCSOA premised on the Tenth Amendment.

We next consider appellant's argument that section 1738B violates her and the children's rights under the United States Constitution's equal protection clause. As she correctly notes, section 1 of the Fourteenth Amendment to the United States Constitution states: "No *state* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any *state* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (Italics added.) ■ The equal protection clause by its very language is limited to states; there is no equal protection clause applicable to the federal government. (8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 592, p. 43.)

■ Appellant argues that section 1738B's "progeny in the California Family Code (e.g., §§ 4909, 4911, and 4960)" is also unconstitutional, tying the constitutional challenges together in her opening brief. In addition, appellant raises the issue of whether California Family Code section 4909, subdivision (d)[1] violates the equal protection clause. ■ But she does not brief this issue, in violation of California Rules of Court, rule 14(a)(1)(B). "When a brief fails to contain a legal argument with citation of authorities on the points made, we may 'treat any claimed error in the decision of the court sustaining the demurrer as waived or abandoned.' [Citations.]" (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948 [36 Cal.Rptr.2d 360].)

■ Having concluded that the FFCCSOA passes constitutional muster, we now review its application to the instant case. Respondent argues that Texas retains exclusive jurisdiction pursuant to section 1738B(d) because Texas is still "the residence of" respondent. Appellant contends that respondent's residence is in Missouri. ■ We review this issue pursuant to the substantial evidence standard. Accordingly, all conflicts in evidence are resolved in favor of the prevailing party, and all legitimate and reasonable inferences are indulged to uphold the trial court's decision. (*In re Marriage of Okum* (1987) 195 Cal.App.3d 176, 181-182 [240 Cal.Rptr. 458].)

■ Government Code section 244 provides: "In determining the place of residence the following rules shall be observed: [¶] (a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose." Further, "[t]here can only be one residence" and "[t]he residence can be changed only by the union of act and intent." (Gov. Code, § 244, subds. (b), (f).)

---

[1]Family Code section 4909, subdivision (d) states: "A tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this chapter or a law substantially similar to this chapter."

The overwhelming evidence in the record shows that respondent does not consider Missouri his state of residence, but always thinks of Texas as his residence. The trial court found that Texas is respondent's residence. A review of the entire record supports this finding. The fact that respondent is registered to vote in Texas is indicative of Texas residency as are his employer's records which list Texas as respondent's home address, even though respondent used the employer's relocation services to purchase a condominium near his office in Missouri. Respondent's eldest daughter lives with him in Texas as does his fiancée and he returns to Texas on weekends and vacations. It is clearly his place "of repose." Consequently, pursuant to section 1738B(d), Texas, as the state which issued the original child support order, had continuing, exclusive jurisdiction over the order.

We also conclude the trial court was correct in determining it lacked subject matter jurisdiction under California Family Code section 4960. That statute states in pertinent part: "(a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if Section 4962 does not apply and after notice and hearing it finds that: [¶] (1) The following requirements are met: [¶] (i) The child, the individual obligee, and the obligor do not reside in the issuing state. [¶] (ii) A petitioner who is a nonresident of this state seeks modification. [¶] (iii) The respondent is subject to the personal jurisdiction of the tribunal of this state."

The evidence is unequivocal that appellant, the party petitioning for modification of the Texas child support order, is a resident of California, and thus does not fall within subdivision (a)(1)(ii) of Family Code section 4960. Moreover, as we have previously determined, there is substantial evidence that respondent, the obligor, resides in Texas, the issuing state. Therefore, the requirement of subdivision (a)(1)(i) is not met.

Appellant argues respondent waived the lack of jurisdiction by making a general appearance through participating in discovery. In support of this argument, appellant relies heavily on *Creed v. Schultz* (1983) 148 Cal.App.3d 733 [196 Cal.Rptr. 252]. But the concept of general appearance attaches to the issue of personal jurisdiction over respondent, not subject matter jurisdiction. Even were we to conclude the concept is relevant, the record unambiguously demonstrates, contrary to the showing made in *Creed*, that the discovery engaged in by respondent related solely to the issue of respondent's residence, the crucial factor in determining whether or not jurisdiction would attach. This does not constitute a general appearance. (*366-388 Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1193-1194 [268 Cal.Rptr. 678]; *Islamic Republic of Iran v. Pahlavi* (1984) 160 Cal.App.3d 620, 623, 628 [206 Cal.Rptr. 752].)

## DISPOSITION

The dismissal order is affirmed. Costs on appeal are awarded to respondent.

Epstein, Acting P. J., and Curry, J., concurred.

A petition for a rehearing was denied July 9, 2002, and appellant's petition for review by the Supreme Court was denied October 16, 2002.