[No. B164733. Second Dist., Div. Four. Nov. 5, 2003.]

CHRISTOPHER BRIAN ROMAN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Duran & Thomas and John J. Duran for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Brent Riggs, Deputy District Attorney; and Phyllis C. Asayama for Real Party in Interest.

OPINION

**EPSTEIN, J.**—Petitioner Christopher Brian Roman challenges the trial court's denial of his motion to set aside an information under Penal Code section 995.[1] He argues there was insufficient evidence to bind him over for trial for violation of section 368, subdivision (b)(1). That statute punishes felony abuse of a dependent adult under circumstances or conditions *likely* to produce great bodily harm or death. He argues that the evidence is insufficient to establish the requisite likelihood and that he knew the victim was a dependent adult. We conclude the showing at the preliminary hearing was sufficient in both respects, and hence the section 995 motion was properly denied. We deny the petition for writ of prohibition.

### FACTUAL AND PROCEDURAL HISTORY

Lillian R., the mother of John Doe No. 1, testified that he is autistic, is hydrocephalic and mentally retarded, and has had three open brain surgeries. John Doe No. 1 is 25 years old, lives with Lillian R., and is enrolled in training programs for disabled persons. Lillian R. makes most decisions for him because he is unable to do so.

---

[1] Statutory references are to the Penal Code except where otherwise indicated.

John Doe No. 1 testified that he was approached by petitioner, who pulled him into his car. Petitioner drove him to a condominium where he told him to watch wrestling on television. Petitioner removed or pulled down John Doe No. 1's pants and sodomized him. John Doe No. 1's testimony is ambiguous as to whether petitioner used a condom. On direct examination, he said he had seen petitioner's penis and had seen sperm come out of it. When asked about the sperm, John Doe No. 1 replied "Condom he put on." When the prosecutor asked if petitioner put on a condom, John Doe No. 1 nodded in the affirmative, but said "No, he put gel on his penis, gel thing." On cross-examination, he twice said he could not recall whether a condom was used. When asked if he knew what a condom is, he said: "Yeah. It's like when you put a penis that makes the sperm come out, yeah." John Doe No. 1 said he had seen the petitioner throw a condom in a toilet, but not at the condominium where he was with petitioner.[2]

Los Angeles Sheriff's Detective Stephen French investigated the charges against petitioner. Petitioner admitted he had picked up John Doe No. 1 and drove him to petitioner's mother's condominium where he gave John Doe No. 1 a drink of water. Detective French testified petitioner said: "They were there for approximately five minutes and he stated that he was very gentle with him. That was other than some other just stuff personal about him and stuff. That was pretty much the extent of what he told me about the two gentlemen, John Doe Number 1 and John Doe Number 2."

Detective French served search warrants at the homes of petitioner's mother and father. At the father's house, the detective recovered a letter written by a Dr. Robert Bolan dated January 13, 2000, and addressed to Judge Barbara Johnson. The letter stated that petitioner was under care for HIV, and that he needed to be monitored especially closely because he had been infected in November 1998. Detective French discussed this letter with petitioner, who admitted that he had been diagnosed with HIV several years before.

A criminal complaint charged petitioner with forcible sodomy (§ 286, subd. (c)(2)) committed upon John Doe No. 1 and John Doe No. 2 (counts 1 and 3); sodomy of a person under the age of 16 on John Doe No. 2 (count 4, § 286, subd. (b)(2)); dependent adult abuse of John Doe No. 1 (count 2, § 368, subd. (b)(1)), and lewd acts upon John Doe No. 2 (§ 288, subd.

---

[2] The testimony was: "Q. Do you remember seeing the man throw a condom in a toilet. [¶] A. Yeah. [¶] Q. Okay. And did the man throw the condom in the toilet at the condominium you were at? [¶] A. No." John Doe No. 1's mother interjected that her son did not know what a condominium is and "doesn't know track of time." Defense counsel asked whether the man John Doe No. 1 saw throw the condom in a toilet was petitioner, and he answered "yeah." He did not recall where the sperm landed.

(c)(1)).[3] A special allegation stated that pursuant to section 12022.85, petitioner committed the sodomy offenses charged in counts 1, 3, and 4 "with knowledge that he/she had acquired immune deficiency syndrome (AIDS) and knowledge that he/she carried antibodies of the human immunodeficiency virus." Following a preliminary hearing, the magistrate denied a motion to dismiss. Petitioner was bound over to the trial court.

Petitioner's motion to set aside the information under section 995 was denied. He petitioned this court for a writ of prohibition. We ordered the People to provide a preliminary response to the petition addressing "only the issue of the sufficiency of the evidence to support the charge that petitioner violated Penal Code section 368(b)(1), i.e., that the alleged conduct was committed 'under circumstances or conditions *likely* to produce great bodily harm or death . . . .' (See *Guevara v. Superior Court* (1998) 62 Cal.App.4th 864 [73 Cal.Rptr.2d 421].)" We then issued an order to show cause setting the matter for argument.

## DISCUSSION

### I

In count 2, petitioner is charged with abuse of John Doe No. 1, a dependent adult, in violation of section 368, subdivision (b)(1). That statute provides misdemeanor or felony punishment for: "Any person who, *under circumstances or conditions likely to produce great bodily harm or death*, willfully causes or permits any . . . dependent adult, with knowledge that he or she is . . . a dependent adult, to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, . . ." (Italics added.) Petitioner argues there were no circumstances or conditions in his encounter with John Doe No. 1 which establish the requisite likelihood of great bodily injury. He contends that his HIV-positive status does not satisfy this element, citing *Guevara v. Superior Court* (1998) 62 Cal.App.4th 864 [73 Cal.Rptr.2d 421].

We begin our analysis with the standard of proof which the prosecution must satisfy at the preliminary hearing, and with the applicable principles of appellate review of the denial of a motion to set aside an information under section 995.

---

[3] This writ proceeding involves only Count 2, abuse of John Doe No. 1.

At the preliminary hearing, the magistrate is the finder of fact. "In making the determination of probable cause, the magistrates do not themselves decide whether the defendant is guilty. (See [*People v.*] *Slaughter* [(1984)] 35 Cal.3d [629] at p. 637 [200 Cal.Rptr. 448]; [*People v.*] *Uhlemann* [(1973)] 9 Cal.3d [662] at p. 667 [108 Cal.Rptr. 657].) Rather, they simply decide whether a reasonable person could harbor a strong suspicion of the defendant's guilt. In doing so, they may 'weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses.' (*Uhlemann, supra,* 9 Cal.3d at p. 668.) . . . In sum, the magistrate's role is limited to determining whether *a reasonable person* could harbor a strong suspicion of the defendant's guilt, i.e., whether such a person could reasonably weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses in favor of harboring such a suspicion." (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 251 [127 Cal.Rptr.2d 177, 57 P.3d 654].) "In ruling on a motion to dismiss made pursuant to section 995, the superior court sits merely as a reviewing court, without the power to judge credibility, resolve conflicts, weigh evidence, or draw its own factual inferences. (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)" (*People v. Hillhouse* (2003) 109 Cal.App.4th 1612, 1622–1623 [1 Cal.Rptr.3d 261].) " ' "On review by appeal or writ . . . the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer." ' " (*People v. Superior Court (Bell)* (2002) 99 Cal.App.4th 1334, 1339 [121 Cal.Rptr.2d 836], quoting *People v. Superior Court (Lujan)* (1999) 73 Cal.App.4th 1123, 1127 [87 Cal.Rptr.2d 320].)

As we shall explain, we think the court in *Guevara v. Superior Court, supra,* 62 Cal.App.4th 864, imposed a burden of proof on the prosecution which is inconsistent with these standards. In *Guevara,* the defendant was charged with a number of offenses, including assault by " 'means of force likely to produce great bodily injury' " in violation of section 245, subdivision (a)(1). The preliminary hearing on the assault counts was on stipulated facts: that the defendant had unprotected consensual sex with a minor victim, knowing that defendant was HIV positive, and that he did not inform the victim of his condition. (62 Cal.App.4th at p. 868.) After his motion to dismiss under section 995 was denied, the defendant petitioned for writ of mandate. The Court of Appeal found merit in the defendant's claim "that there was no evidence *before the magistrate* that his bodily fluids 'were likely to infect the minor with HIV.' " (*Guevara,* at p. 869.) The *Guevara* court explained: "The stipulated facts contained no evidentiary basis for an inference regarding the *likelihood* that one or two individual incidents of unprotected sex between an HIV-positive male and an uninfected female would result in transmission of HIV to the female." (*Ibid.*)

The appellate court concluded that this evidentiary deficiency could not be remedied by resort to judicial notice, because "the likelihood that the charged acts would result in transmission of HIV is not undisputed." (*Guevara v. Superior Court, supra,* 62 Cal.App.4th at pp. 869–870.) In support of this statement, the court cited articles from the Journal of Acquired Immune Deficiency Syndromes and Epidemiology. These studies apparently found that the infection rate of female partners of infected males who engaged in unprotected intercourse was less than 10 percent. (*Id.* at p. 870, fn. 2.)

The *Guevara* court concluded: "In order to hold petitioner to answer on the aggravated assault counts, the magistrate had to have a 'rational' basis for 'assuming the possibility' that petitioner's act was 'likely to produce great bodily injury.' The record discloses no such 'rational' basis for the magistrate's implicit assumption." (*Guevara v. Superior Court, supra,* 62 Cal.App.4th at p. 870.)

We agree with the People that *Guevara* was wrongly decided. We are not told whether the *Guevara* court was presented with an argument similar to that made here: that the requisite rational basis for the magistrate's ruling is satisfied by existing California statutes addressing the dangers of HIV transmission. The *Guevera* court did not resort to judicial notice because scientific publications indicated a dispute about whether the acts of the defendant would result in the transmission of HIV. (*Guevara v. Superior Court, supra,* 62 Cal.App.4th at pp. 869–870.) But the existence of a dispute is not enough. The issue is "whether a person of ordinary caution or prudence would be led to believe and conscientiously entertain a *strong suspicion* that the defendant committed the crime charged." (*People v. Superior Court (Lujan), supra,* 73 Cal.App.4th at p. 1127, italics added.) ■ Proof beyond a reasonable doubt is not required at a preliminary hearing. ■ A dispute in the scientific community concerning the likelihood of HIV transmission on a single exposure does not compel a finding that a single act of unprotected sex is insufficient to raise a strong suspicion that the victim was subjected to the likelihood of great bodily harm or death.

The People argue that the *Guevara* court confused the criminal assault with its potential consequences. It analogizes: "The more times an assailant fires a gun at a victim, the greater the odds that one of the bullets will hit its target. But the danger posed to the victim from the first shot is as great as that posed from the last shot."

We find the analogy apt. While the risk of transmission of HIV may increase with each incident, the risk of infection is present at each exposure, including the first. Although scientific studies may be proffered at trial, none were offered at petitioner's preliminary hearing. ■ The issue

is whether scientific evidence regarding the risk of HIV infection was required at that stage. As we next explain, it was not.

Petitioner argues that there is an evidentiary deficiency in his case, similar to that discussed in *Guevara*, exacerbated here by evidence that he used a condom. The People argue that the rational ground for entertaining a strong suspicion that petitioner's conduct put John Doe No. 1 at risk of great bodily harm is provided by the statutory scheme mandating testing for and the disclosure of HIV status for defendants charged with specified sex crimes, including sodomy. Health and Safety Code section 121050, a testing statute, states the purpose of the testing requirements: "The people of the State of California find and declare that AIDS, AIDS-related conditions, and other communicable diseases pose a major threat to the public health and safety. [¶] The health and safety of the public, victims of sexual crimes, and peace officers, firefighters, and custodial personnel who may come into contact with infected persons, have not been adequately protected by law. The purpose of this chapter is to require that information that may be vital to the health and safety of the public, victims of certain crimes, certain defendants and minors, and custodial personnel, custodial medical personnel, peace officers, firefighters and emergency medical personnel put at risk in the course of their official duties, be obtained and disclosed in an appropriate manner in order that precautions can be taken to preserve their health and the health of others or that those persons can be relieved from groundless fear of infection."

Sodomy in violation of section 286 is one of the predicate crimes that triggers a request to conduct such testing. Testing is required if a judge finds that "probable cause exists to believe that a possible transfer of [specified bodily fluids] took place between the defendant . . . and the alleged victim . . . ." (Health & Saf. Code, § 121055.)

The People argue that John Doe No. 1 falls within the scope of the statutory HIV testing scheme because of evidence that petitioner knew he had HIV, and that John Doe No. 1 was exposed to petitioner's bodily fluids. They contend that John Doe No. 1 was entitled to discover if he is now at risk of AIDS because of petitioner's status and the exposure. Referring to the ballot arguments in favor of Proposition 96, the predecessor to Health and Safety Code section 121050, they argue: "The declaration of the voters of the major health risk posed by AIDS, coupled with the right of specified individuals to have a defendant's blood tested for AIDS if they make skin contact with the defendant's bodily fluids, provides a rational ground for assuming the possibility that, under the facts of this case, Roman willfully committed the charged offense under circumstances and conditions likely to produce great bodily harm or death."

■ Actual harm or injury is not requisite to a rational basis to conclude that the assault on John Doe No. 1 was committed under circumstances likely to produce great bodily harm, as required by section 368, subdivision (b)(1). Section 368 is patterned on the felony child abuse statute, section 273a. The relevant passage of section 273a makes it a felony for a person to harm or endanger a child *"under circumstances or conditions likely to produce great bodily harm or death, . . ."* (Italics added.) Our Supreme Court has recognized this derivation of section 368 and has held that it is appropriate to review decisions interpreting section 273a in addressing issues concerning the scope of section 368. (*People v. Heitzman* (1994) 9 Cal.4th 189, 204–205 [37 Cal.Rptr.2d 236, 886 P.2d 1229].) Courts have held that there is no requirement under section 273a that the victim actually suffer great bodily injury. (*People v. Cortes* (1999) 71 Cal.App.4th 62, 80 [83 Cal.Rptr.2d 519].)

Similarly, the Supreme Court has recognized the similarity between the great bodily harm language in section 273a and the portion of section 245, subdivision (a)(1), which proscribes " 'assault . . . by any means of force *likely to produce great bodily injury.'* " (*People v. Sargent* (1999) 19 Cal.4th 1206, 1221 [81 Cal.Rptr.2d 835, 970 P.2d 409], italics added.) The *Sargent* court observed that numerous decisions hold that it is for the trier of fact to decide whether the force used by the defendant was likely to produce great bodily injury. (*Id.* at pp. 1221–1222.) The Supreme Court has held that whether the victim of a section 245, subdivision (a)(1) aggravated assault suffers actual harm is immaterial. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028 [68 Cal.Rptr.2d 655, 945 P.2d 1204].)

■ We are satisfied that the statutory schemes establishing precautions for those who are potentially exposed to HIV provide a rational basis to "entertain a strong suspicion" that the forcible sodomy committed on John Doe No. 1 exposed him to the likelihood of great bodily harm or death within the meaning of section 368.

Petitioner argues these statutes cannot provide a rational basis for holding him to answer for violation of section 368, subdivision (b)(1) because later scientific studies have either discredited or cast doubt on the concerns which led to the enactment of these laws. He proffers two fact sheets which he says were prepared by the Centers for Disease Control, and an issue of the Morbidity and Mortality Weekly Report issued by the United States Department of Health and Human Services. None of this was presented to the magistrate or to the trial court that heard petitioner's 995 motion. We decline to consider these materials for the first time here.

The state testing and reporting laws cited by the People are relevant to the showing required at the preliminary hearing. The gravity of exposure to

HIV is discussed in *Johnetta J. v. Municipal Court* (1990) 218 Cal.App.3d 1255 [267 Cal.Rptr. 666], which rejected constitutional challenges to the required testing of defendants who exposed victims or public safety workers to HIV.[4] Recognizing that AIDS is a fatal disease and conflicting medical research about transmission of the virus and infection, the court found a compelling state interest in protecting public safety officers from the anxiety and risk of fatal infection from HIV transfers. It upheld the statutory requirement of testing. (*Johnetta J.,* at pp. 1263–1270, 1280, 1282–1283; see also *Bragdon v. Abbott* (1998) 524 U.S. 624, 633–638 [141 L.Ed.2d 540, 118 S.Ct. 2196] [discussing risks involved in HIV infection in context of claim under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.].)

Petitioner argues there is no evidence at the preliminary hearing that his semen came in contact with the skin of John Doe No. 1. The magistrate was required to draw every legitimate inference in favor of the information. (*People v. Superior Court (Lujan)*, *supra*, 73 Cal.App.4th at p. 1127.) There was evidence that John Doe No. 1 saw petitioner's semen, and that he was sodomized. This supports an inference that petitioner's semen came in contact with John Doe No. 1. As we have discussed, the issue at the preliminary hearing is simply " 'whether a person of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion that the defendant committed the crime charged.' [Citation.]" (*Ibid.*) That standard was satisfied here.

Petitioner also argues there is no rational basis to infer the likelihood of great bodily harm or death because there was evidence of condom usage, citing the scientific publications he submits in support of his reply. As we have seen, John Doe No. 1's testimony was ambiguous about whether petitioner used a condom and the magistrate could infer that he did not use one when the sodomy occurred.[5]

II

Petitioner argues there is no evidence that he knew John Doe No. 1 was a dependent adult, an element of a violation of section 368, subdivision (b)(1). He contends his time with the victim was brief, so it may not be inferred that he was aware of John Doe No. 1's developmental limitations.

---

[4] The court in *Johnetta J.* construed former Health and Safety Code section 199.5 et seq. which was added by initiative (Prop. 96) approved by the electorate on November 8, 1988. It is the predecessor of Health and Safety Code section 121050 et seq., cited by the real party in this case. (See Historical and Statutory Notes, 41E West's Ann. Health & Saf. Code (1996 ed.) foll. § 121050, p. 334.)

[5] We need not and do not address whether the evidence would be sufficient if it was established that petitioner did use a condom.

Section 368, subdivision (b)(1) requires that a violator act "with knowledge that [the victim] is an elder or a dependent adult, . . ." "Dependent adult" is defined in section 368, subdivision (h): " '[D]ependent adult' means any person who is between the ages of 18 and 64, who has physical or mental limitations which restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities . . . ."

Lillian R., John Doe No. 1's mother, testified about his mental and developmental limitations at the preliminary hearing. This condition is apparent in our review of his brief testimony at the preliminary hearing. The magistrate had the benefit of observing John Doe No. 1's demeanor as a witness. We are satisfied that there was sufficient evidence from which the magistrate could strongly suspect that petitioner was aware John Doe No. 1 was a dependent adult during their interaction.

### III

Finally, petitioner complains that the magistrate summarily denied his motion to dismiss the complaint without specifying reasons or a rationale. He cites no authority for this argument, and under standard principles of appellate review, we treat the issue as abandoned. (See *Harding v. Harding* (2002) 99 Cal.App.4th 626, 635 [121 Cal.Rptr.2d 450].)

### DISPOSITION

The petition for writ of prohibition is denied.

Vogel (C.S.), P. J., and Curry, J., concurred.

On December 2, 2003, the opinion was modified to read as printed above.