Filed 10/29/13  P. v. Nguyen CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047341 |
| v. | (Super. Ct. No. 11WF0913) |
| RICHARD VU NGUYEN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James Edward Rogan, Judge.  Affirmed.

Nancy S. Brandt, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott Taylor and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant, Richard Vu Nguyen, of felony dependent adult abuse (Pen. Code, § 368, subd. (b)(1); all further statutory references are to this code). He was sentenced to two years in prison and assessed $240 in both restitution and parole revocation restitution fines.

Defendant contends there was insufficient evidence to prove dependent adult abuse, and in the alternative, the abuse amounted to a misdemeanor rather than a felony. In addition, he argues the court's assessment of the $240 restitution fines violated ex post facto principles and should be reduced to $200 each. We conclude there was sufficient evidence dependent adult abuse occurred and that such abuse amounted to a felony. Furthermore, defendant's ex post facto claim was waived when he failed to object in the trial court. Accordingly, we affirm the judgment.

FACTS

Loan Do (Loan) is severely impaired and suffers from severe Down syndrome, leaving her unable to care for herself. Her primary form of communication is through grunting noises. At the time of the incident, Loan lived with her father Thuc Do (Thuc), her sister Mai Do (Mai), Mai's nephew Huy Nguyen (Huy) ,[1] and defendant. Mai, Loan's primary caretaker, is defendant's girlfriend.

When defendant moved into the residence, both Huy and a longtime family friend, Kenneth Griffith, noticed Loan's demeanor changed. After Griffith witnessed a suspicious incident between Loan and defendant in which he heard Loan screaming and crying followed by defendant running from her room, he and Huy installed a "nanny cam" in Loan's bedroom.

---

[1] No relation to defendant.

In April 2011, Huy heard Loan make a "frightening scream" while in her bedroom, which he described as different from her "daily screams." Upon investigating Huy found Thuc arguing with defendant outside of Loan's room. Thuc was demanding to know "why [his] daughter was screaming," and "what [defendant was] doing in that area." Suspicious, Huy reviewed the video recording to check for any wrongdoing. Huy and a police officer later testified the recording showed defendant running into Loan's bedroom, kicking her in the head causing her to fall backwards, and then running back out.

Later that same day, Huy and Thuc checked on Loan once again after hearing her crying and found her in the corner of the room, teary eyed, and surrounded by shoes. The video recording from just prior shows a series of shoes being thrown into Loan's room in her direction. While the person throwing the shoes is outside the camera's field of view and thus unidentifiable, defendant can be seen walking into the room soon after the shoes had been thrown.

Shortly thereafter, defendant was arrested and charged with dependent adult abuse. In an interview with police defendant was asked if he remembered kicking Loan, to which he answered, "I don't really remember. I kicked her[;] I tried to get her to shut up or something." He also stated in the interview he "used [his] foot to get her to shut up," and he may have kicked her because he was "drunk" or "mad because of [Thuc] yelling at [him] all the time."

## DISCUSSION

### 1. Substantial Evidence

Defendant argues there was insufficient evidence to support his conviction for dependent adult abuse. Or in the alternative, the dependent adult abuse did not rise to the level of a felony, and instead should be deemed a misdemeanor.

3

When evaluating a claim for insufficient evidence we are required to accept all evidence which supports the successful party, disregard the conflicting evidence, and draw all reasonable inferences to uphold the verdict. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069.) Substantial evidence may consist of circumstantial evidence as well as direct evidence. (*Ibid*.) We may reverse for lack of substantial evidence only if "'"'upon no hypothesis whatever is there sufficient substantial evidence to support'"'" the conviction. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

### a. Dependent Adult Abuse

Dependent adult abuse occurs if a person "willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering." (§ 368, subd. (b)(1).)

Defendant's primary argument is there is no substantial evidence to conclude he willfully inflicted unjustifiable physical pain or mental suffering on Loan. More specifically, he claims the kicking incident recorded on the "nanny cam" was insufficient to prove his guilt because he did not actually kick Loan and because there was no evidence she suffered any physical or mental pain from the incident. We disagree.

Defendant's contention that he never actually kicked Loan in the head is a meritless argument for purposes of an insufficient evidence appeal. During the police interview defendant claimed he could not remember if he had kicked Loan or not, but then went on to explain *why* he had kicked her, saying he "used [his] foot to get her to shut up" and "[he] kicked her[; he] tried to get her to shut up or something." Further, the jurors were able to watch the video for themselves and draw the reasonable inference from it. This court "must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

4

The logical inference from defendant's admissions and the video recording is that defendant did actually kick Loan in the head.

Defendant argues Loan's reaction to the alleged kick as well as the lack of visible injuries on her shows he never actually kicked her. This amounts to nothing more than contradictory evidence, which we are not in a position to reweigh. (*People v. Xiong* (2013) 215 Cal.App.4th 1259, 1268.) Consequently, we are required to accept the jury's inference that defendant did kick Loan in the head, leaving the sole question as to whether there was sufficient evidence that such a kick caused Loan unjustifiable physical or mental pain. (*Ibid.*)

While Loan may be unable to communicate, making it difficult to prove or quantify her suffering, Huy testified stating the scream Loan let out just after the kicking incident was "frightening" and different from her daily screams. It was reasonable for the jury to infer being kicked in the head would result in physical or mental anguish to Loan.

Finally, the infliction of physical pain or mental suffering is considered unjustifiable "when it is not warranted by the circumstances." (*People v. Whitehurst* (1992) 9 Cal.App.4th 1045, 1050.) Defendant stated that he kicked Loan "to get her to shut up or something." The involuntary noises of a mentally disabled person do not justify kicking her in the head. Accordingly, there was sufficient evidence that defendant kicked Loan, that she suffered mental or physical pain from the kick, and that the kick was unjustified.

### b. Felony vs. Misdemeanor

Defendant argues in the alternative the jury erred in deeming the dependent adult abuse a felony rather than a misdemeanor. We are not persuaded.

Dependent adult abuse amounts to a felony when the abuse takes place under circumstances or conditions likely to produce great bodily harm. (§ 368, subd.

5

(b)(1).) Should the abuse occur under circumstances or conditions *unlikely* to produce great bodily harm the crime is deemed a misdemeanor. (§ 368, subd. (c).) Moreover, courts have held there is no requirement the victim actually suffer great bodily injury. (*People v. Cortes* (1999) 71 Cal.App.4th 62, 80.)

While defendant maintains Loan suffered no great bodily injury, he concedes we must consider not just the actual injury sustained, but also on the *likelihood* the abuse could have caused great bodily injury. In determining the likelihood of great bodily injury, a jury is permitted to look at not just the force or nature of the abuse inflicted, but at the surrounding circumstances as well. (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1333.) These include: "(1) the characteristics of the victim and the defendant, (2) the characteristics of the location where the abuse took place, (3) the potential response or resistance by the victim to the abuse, (4) any injuries actually inflicted, (5) any pain sustained by the victim, and (6) the nature of and amount of force used by the defendant." (*People v. Clark* (2011) 201 Cal.App.4th 235, 245, fn. omitted.)

Defendant's entire argument is predicated upon the fact he never actually struck Loan but instead only made a "stomping" motion in her vicinity. As previously discussed, it was reasonable for the jury to determine that what defendant describes as a "stomping" motion was in fact a kick to Loan's head. Defendant's description of the motion as a "stomp" gives insight into the velocity and forcefulness of the act. One rarely *lightly* stomps with hopes to intimidate someone into being quiet. Certainly being kicked in the head with a stomping motion by an adult male would be likely to inflict great bodily injury on nearly anyone, much less a four-foot-tall, 75-pound woman such as Loan.

Moreover, had the jury concluded, as defendant claims, that he did not strike Loan, but instead only used his foot to frighten her into being quiet, it could still find those circumstances likely to produce great bodily injury. There is no requirement for actual injury to occur, but instead only a requirement that the incident be *likely* to

6

produce great bodily harm.  (§ 368, subd. (b)(1); *Roman v. Superior Court* (2003) 113 Cal.App.4th 27, 35.)

In *People v. Wilson* (2006) 138 Cal.App.4th 1197, the court found a mother's intentional hitting of a wall next to her child's head was likely to produce great bodily injury.  In reaching this conclusion, the court pointed to the size disparity between the mother and her son as well as the close proximity between where she hit the wall and her son's head.  (*Id.* at p. 1205.)  At issue in *Wilson* was section 273a, felony child abuse, rather than dependent adult abuse under section 368.  (*People v. Wilson, supra*, 138 Cal.App.4th at p. 1205.)  But the statutory language describing the type of abuse that amounts to a felony in section 273a is identical to that of section 368.  Accordingly, our Supreme Court has held it is appropriate to rely on decisions interpreting section 273a in addressing issues concerning the scope of section 368.  (*People v. Heitzman* (1994) 9 Cal.4th 189, 204-205.)

If it was determined defendant never actually struck Loan, the facts mirror those in *Wilson*, and thus still justify the jury's finding.  The victim in *Wilson* was a young boy, drastically smaller in stature to the assailant, his mother.  Loan is a four-foot-tall, 75-pound woman, and while we do not know the size of defendant it is reasonable to conclude an adult male is significantly larger, resulting in a similar size disparity between victim and assailant.  Additionally, as was the case in *Wilson* where the victim was never physically struck but had a broom strike close to his head, so too was the stomping motion close in proximity to Loan's head.  Accordingly, even if defendant did not kick Loan, there was enough circumstantial evidence to warrant the jury's finding the incident was likely to produce great bodily harm.

We reject defendant's reliance upon *People v. Racy*, *supra*, 148 Cal.App.4th 1327.  The issue in *Racy* was the trial court's refusal to give jury instructions regarding misdemeanor dependent adult abuse.  In contrast, the jurors here were instructed with the misdemeanor dependent adult abuse instructions.  Therefore, we will

7

not disturb the finding that the dependent adult abuse amounted to a felony rather than a misdemeanor.

2. *Restitution Fines*

Defendant argues the trial court's assessment of $240 restitution fines violated ex post facto principles and thus should be reduced to the minimum fines the statute authorized at the time the crime was committed, $200. Defendant did not object to the fines at the time of sentencing.

An unauthorized sentence may be corrected at any time whether or not there was an objection in the trial court. (*People v. Smith* (2001) 24 Cal.4th 849, 854.) But "'[t]he unauthorized sentence exception is "a narrow exception" to the waiver doctrine that normally applies where the sentence "could not lawfully be imposed under any circumstance in the particular case."''" (*People v. Turrin* (2009) 176 Cal.App.4th 1200, 1205.) We conclude the sentence was authorized and thus defendant's argument is forfeited on appeal.

"The restitution fine shall be set at the *discretion of the court* and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012." (§ 1202.4, subd. (b)(1), italics added.) At the time defendant committed the crime the statute provided for a $200 minimum fine. (Former § 1202.4, subd. (b)(1).)

Defendant argues that the $240 fines demonstrate the trial court improperly relied on the newer version of the statute. There is no evidence in the record to support this claim. But even if the court did rely on the amended statute, assessing a fine $40 above the minimum at the time the crime was committed was within the court's discretion. In other words, regardless of which version of the statute the trial court applied, the sentence was proper within the bounds of the applicable section 1202.4. Thus, it was not a sentence which "'"could not lawfully be imposed under any

8

circumstance in the particular case."''" (*People v. Turrin*, *supra*, 176 Cal.App.4th at p. 1205.) Therefore the assessment of the $240 was not an unauthorized sentence and cannot be reviewed on appeal absent an objection in the trial court. (*Ibid.*)

Furthermore, even on the merits, we still find no error. In support of his argument defendant cites a trio of cases, all of which were concerned with different ex post facto issues than the one presently before us. They deal not with the increase in the minimum punishment, but instead with an increase in the maximum punishment. (*Miller v. Florida*[2] (1987) 482 U.S. 423; *Weaver v. Graham* (1981) 450 U.S. 24; *Lindsey v. State of Washington* (1937) 301 U.S. 397.) These do not assist defendant.

The ex post facto clauses of the state and federal Constitutions prohibit the imposition of increased punishment after the commission of a crime. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) Accordingly, "one of the primary purposes" of the ex post facto clause is "to prevent unforeseeable punishment." (*People v. Snook* (1997) 16 Cal.4th 1210, 1221.) For this reason an increase of the minimum fine is fundamentally different than an increase in the maximum fine. An increase in the maximum punishment makes possible a sentence that was unforeseeable at the time the crime was committed. But an increase in the minimum punishment, as long as it remains below the previously established maximum, still leaves the range of punishment in which any sentence within its bounds was foreseeable at the time the crime was committed. Therefore, regardless of whether the argument was forfeited, we find no merit in defendant's argument.

---

[2] Defendant incorrectly cites to this case as *People v. Miller.*

DISPOSITION

The judgment is affirmed.

THOMPSON, J.

WE CONCUR:

MOORE, ACTING P. J.

ARONSON, J.

10