Filed 5/6/21  P. v. Wodaszewski CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DAVID LEE WODASZEWSKI,

    Defendant and Appellant.

E074783

(Super.Ct.No. FVI18000606)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Tony Raphael, Judge.  Affirmed.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant David Lee Wodaszewski threatened his 71-year-old mother (the victim) that he would kill her if she called his probation officer.  The

1

following day, defendant punched the victim into a kitchen cabinet, grabbed her chest, and when she fell trying to get away from him, he tried to pull her up by her hair. Defendant chased her through the house with his fists raised until she was able to escape outside.

Defendant was convicted of felony elder abuse under circumstances likely to cause great bodily injury or death (Pen. Code, § 368, subd. (b)(1)) [1] and making criminal threats (§ 422, subd. (a)). Defendant was sentenced to four years eight months to be served in state prison.

Defendant claims on appeal that insufficient evidence was presented to support his convictions. He further contends his criminal threats conviction violates his First Amendment and Fourteenth Amendment rights under the United States Constitution to freedom of speech and expression and due process of law.

## FACTUAL AND PROCEDURAL HISTORY

A.    PEOPLE'S CASE-IN-CHIEF

1.    *PRIOR INCIDENT*

Robert was defendant's father. On March 18, 2015, defendant and Robert went fishing together. At the time, Robert was 70 years old and defendant was in his late forties. After they went fishing, defendant and Robert went to the victim's home, which was in Apple Valley. Robert and the victim were divorced. Defendant lived with the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

victim. Robert fell asleep in a reclining chair in the living room. Robert awoke and heard defendant yelling in his room at the voices in his head to "Shut up."

Robert yelled to defendant to "Shut up." Suddenly, defendant punched him on the side of his face and on his nose. Robert's nose was bleeding. Defendant threatened to kill Robert. Robert pulled defendant into a bear hug to stop him from punching him and the victim pulled defendant off Robert. Defendant told the victim, "Get off me. I will kill you too." The side of Robert's face was black and blue after the incident. Robert explained that at the time it was normal for defendant to yell at the voices in his head.

On June 3, 2015, defendant was convicted of felony elder abuse as a result of this incident.

### 2. *CURRENT INCIDENT*

On February 28, 2018, the victim was with defendant at her house in Apple Valley.[2] Defendant was drunk. He told the victim, "I want to hurt you, mama." When she asked him why and told him that she loved him, he responded, "I want to hurt you. Do you want me to hurt you?" The victim told him no. Defendant punched the victim into a cabinet. He grabbed her around the chest and twisted her. She ducked down and tried to get away. He pulled her by her hair trying to get her up off the ground but her hair was too thin. The victim was able to get away. Defendant chased her through the house holding up his fists. She was able to grab her phone and run out of the house. She ran down the street and called the police.

---

[2] The victim was 73 years old at the time of trial, which took place in January 2020.

When the police arrived, the victim was shaking and told the police she did not want to go back into the house. She was scared to death. She told the police that she was afraid of defendant and she believed that he would kill her. As a result of defendant twisting her chest, the victim had bruises on her chest that lasted for approximately one month.

The day prior to this incident, on February 27, defendant had threatened to kill the victim. Defendant did not want to visit his probation officer. The victim threatened to call defendant's probation officer if defendant did not got see him. Defendant told the victim that he would kill her if she called his probation officer. The victim was scared of defendant all the time when he was drinking. Defendant had kicked her dog in the past.

The victim was upset with defendant when he threatened to kill her because she stated "he scares me to death." She was scared of him because she did not know what he was going to do. The victim was afraid to leave defendant home alone at the house. One time she went out and came back to find he had burned her collection of dolls. When the victim was asked if she was "scared that at some point [her] safety was at issue," the victim responded, "All my life. If you live that way all your life, you just get ready to die, and I've been waiting to die all my life with him. The victim indicated that defendant was mentally ill and had several personalities.

On February 28, San Bernardino County Sheriff's Deputy Kent Watson arrived at the victim's home around 1:40 p.m. He found the victim hiding behind a hedge near her neighbor's house. The victim was scared and shaking. Deputy Watson entered the victim's home.

Deputy Watson asked defendant what had happened with the victim.[3] Defendant told Deputy Watson that he had just given the victim a hug and pretended that he was fighting with her. He denied that he was mean to her. Deputy Watson accused defendant of shoving the victim into the kitchen counter. Defendant responded, "I didn't. I fuckin grabbed her." He "might" have threatened to kill her if she made him go to his probation officer. He did not want to go. He "did" push her into the counter but he hugged her and told her he loved her. The victim appeared relieved when Deputy Watson told her that he was going to arrest defendant.

Defendant did not present any witnesses.

## DISCUSSION

Defendant contends there was insufficient evidence presented below to support his convictions of (1) felony elder abuse (§ 368, subd. (b)(1)) because the circumstances upon which he punched and grabbed the victim and pulled her hair did not and were not likely to produce great bodily harm or death; and (2) his criminal threats conviction pursuant to section 422 must be reversed as his threat to kill her if she called his probation officer was not so unequivocal, unconditional, immediate and specific as to convey a gravity of purpose or an immediate prospect of execution of the threat and the victim was not in sustained fear based on the threat.

---

[3] Deputy Watson was wearing a body camera and the video of the discussion with defendant was played for the jury.

A.    SUFFICIENCY OF THE EVIDENCE

When the sufficiency of evidence is challenged on appeal, we must review " 'the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Davis* (2009) 46 Cal.4th 539, 606.)  "We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004.)  " 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' " (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

1.    *ELDER ABUSE ALLEGATION*

"A defendant can be convicted of felony elder abuse when he or she 'knows or reasonably should know that a person is an elder . . . and who, *under circumstances or conditions likely to produce great bodily harm or death*, willfully causes or permits any elder . . . to suffer, or inflicts thereon unjustifiable physical pain or mental suffering.' " (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1331-1332.)  "[I]n a trial for elder abuse, a jury is not required to unanimously agree on one circumstance or condition that was likely to produce great bodily harm or death, but rather, may consider all the 'circumstances or conditions' that were likely to produce great bodily harm or death." (*Id.* at p. 1334.)

6

In determining substantial danger of great bodily injury or death for an elder abuse conviction, "circumstances and conditions a reasonable jury could consider include, but are not limited to, (1) the characteristics of the victim and the defendant, (2) the characteristics of the location where the abuse took place, (3) the potential response or resistance by the victim to the abuse, (4) any injuries actually inflicted, (5) any pain sustained by the victim, and (6) the nature of and amount of force used by the defendant." (*People v. Clark* (2011) 201 Cal.App.4th 235, 245, fn. omitted.)

While the extent of a victim's actual injuries is a relevant factor, "[t]here is no requirement that the victim actually sustain great bodily injury." (*People v. Clark*, *supra*, 201 Cal.App.4th at pp. 243, 245, fn. 6; *Roman v. Superior Court* (2003) 113 Cal.App.4th 27, 35 [no requirement under section 368, subdivision (b)(1), that victim actually suffer great bodily injury].) "Whether the injury is inflicted under circumstances or conditions likely to produce great bodily injury is a question for the trier of fact." (*Clark*, at p. 245.) Here, "a rational jury could have found that the totality of the circumstances and conditions created a substantial danger of great bodily injury." (*Id*. at p. 245.)

The prosecution proceeded on the theory at trial that defendant was guilty of felony elder abuse. The jury was instructed that they must find defendant willfully inflicted unjustifiable physical pain or mental suffering on the victim; he inflicted suffering on the victim under circumstances or conditions likely to cause great bodily injury or death; the victim was an elder; and defendant was aware that the victim was an elder. The jury was instructed that great bodily injury was significant or substantial physical injury; it was an injury greater than minor or moderate harm. The jury was also

7

instructed on the lesser offense of a violation of section 368, subdivision (c). It excluded the element that defendant inflicted suffering under circumstances or conditions likely to cause great bodily injury or death.

Here, defendant confronted the victim and told her that he wanted to hurt her. The victim told him that she did not want him to hurt her. Defendant and the victim were home alone, which made the victim particularly vulnerable to being harmed by defendant. The victim also was terrified of defendant because she never knew what he would do to her. Defendant punched the victim into a cabinet. He grabbed her and twisted her chest. As a result, she had a bruise in the area for one month after the altercation. The victim fell to the ground to get away from defendant. He tried to pull her up by her hair but was unsuccessful. The jury reasonably could conclude that being punched by defendant and her falling to the ground could cause great bodily injury to her based on her being approximately 71 years old. She easily could have broken a bone while falling.

Further, the victim ran away from defendant trying to get away. Defendant chased her holding up his fists. The victim could have fallen at any time and seriously hurt herself.

Defendant, who was 30 years younger than the victim, attacked her in her own home with no one present to help her. The victim sustained an injury to her chest and was susceptible to falling, potentially breaking a bone or sustaining other potential injury while being chased. Defendant's felony conviction of elder abuse is supported by substantial evidence.

8

## 2. *CRIMINAL THREATS*

Defendant contends insufficient evidence supports his conviction of making criminal threats (§ 422). Specifically, the threat was not made under circumstances that were so unequivocal, unconditional or immediate to convey to the victim a gravity of purpose and an immediate prospect of execution of the threat, and the victim was not in sustained fear based on the threat.

The California Supreme Court has stated that the prosecution must prove the following five elements for a violation of section 422: "(1) [T]hat the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228 (*Toledo*).)

Defendant first claims that the threat by defendant was not so unequivocal, unconditional, immediate and specific as to convey to the victim a gravity of purpose and immediate prospect of execution. Defendant had previously made threats but had never

9

followed through on hurting her. Further, defendant was allowed to remain in the house that night. The threat was just an outburst conveying the fact that defendant was still mentally ill.

"We determine whether the words used by appellant 'were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat' by considering 'all the surrounding circumstances and not just the words alone.' [Citation.] There is no requirement that the threat be unconditional, nor can we judge a threat 'solely on the words spoken. It is clear by case law that threats are judged in their context.' [Citation.] '[I]t is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422.' " (*People v. Culbert* (2013) 218 Cal.App.4th 184, 190.)

The parties' history can be considered as one of the relevant circumstances in determining whether a defendant intended his words to be taken as a threat. (*People v. Mosley* (2007) 155 Cal.App.4th 313, 324; *People v. Gaut* (2002) 95 Cal.App.4th 1425, 1431.) The word "immediate," as used in section 422, means "that degree of seriousness and imminence which is understood by the victim to be attached to the future prospect of the threat being carried out, should the conditions not be met." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538, fn. omitted.)

The words used by defendant were sufficiently unequivocal, unconditional, immediate and specific to convey to the victim an immediacy of purpose and immediate prospect of execution of the threat. Initially, the jury was instructed it could consider

10

defendant's prior conviction of elder abuse to support the criminal threat charge. The jury could consider the evidence for the elements of whether defendant intended that his statement be understood as a threat. The victim had been present when defendant had severely beaten Robert. At that time, defendant had threatened to kill the victim because she intervened. The victim had seen that defendant was willing to injure his own family.

Further, the threat that defendant would kill her was taken as an immediate threat by the victim as she was always "scared to death" of defendant because she did not know what he would do next. Defendant was unpredictable and she had been waiting her whole life to die at his hands. Defendant, when left alone, had previously burned the victim's dolls and kicked her dog. Based on the history of the victim and defendant, she could reasonably understand the "seriousness and imminence" of defendant's threat and that he was willing to follow through on the threat. (*People v. Melhado*, *supra*, 60 Cal.App.4th at p. 1538.) The victim reasonably could believe that if she called defendant's probation officer, defendant would immediately follow through with the threat to kill her. Substantial evidence supported the jury's finding that the threat was unequivocal, unconditional, immediate and specific so as to convey to the victim a gravity of purpose and immediate prospect of death or serious bodily injury.

Defendant further contends that insufficient evidence was presented to support that the victim was in sustained fear; the threat to kill her was not the "cause" of her fear as she was always in fear of him.

Sustained fear means any "period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156; see also

11

*People v. Roles* (2020) 44 Cal.App.5th 935, 942.) "The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*Allen*, at p. 1156.) In *Allen*, the evidence supported a finding of sustained fear because the defendant was "armed, mobile, and at large" for a sustained period of 15 minutes following a threat to kill the victim and her daughter (his ex-girlfriend) against whom he had a long history of stalking (the victim had seen defendant previously look in her windows) and domestic violence. (*Id.* at pp. 1155-1156.)

"[I]t is clear a jury can properly consider a later action taken by a defendant in evaluating whether the crime of making a terrorist threat has been committed. . . . the threatening statement does not have to be the sole cause of the victim's fear and that a statement the victim does not initially consider a threat can later be seen that way based upon a subsequent action taken by a defendant." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1014.) "Defendant's activities after the threat give meaning to the words and imply that he meant serious business when he made the threat." (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1221, fn. omitted.)

Defendant's actions after making the threat to the victim showed that he "meant serious business when he made the threat." (*People v. Martinez*, *supra*, 53 Cal.App.4th at p. 1221, fn. omitted.) Defendant woke up the day after threatening to kill the victim if she contacted his probation officer and told her that he wanted to hurt her. He then punched the victim, grabbed her and chased her. As a result, the victim ran out of her house and called the police. When the police arrived, the victim did not want to go back inside the house for fear that he would kill her. The victim was shaking and clearly in

12

fear of defendant after this incident. While the victim was always in fear of defendant, defendant acted on his threat this time. Based on the foregoing, the jury could reasonably conclude that based on defendant's actions, the victim was in sustained fear of defendant threatening to kill her.

### B. FIRST AMENDMENT

Defendant further contends that his conviction of making criminal threats must be reversed because it violates his right to freedom of speech and due process under the First and Fourteenth Amendments to the United States Constitution. Specifically, he argues that his conduct was not so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and immediate prospect of execution.

" '[T]he state may penalize threats, even those consisting of pure speech, provided the relevant statute singles out for punishment threats falling outside the scope of First Amendment protection. [Citations.] In this context, the goal of the First Amendment is to protect expression that engages in some fashion in public dialogue, that is " 'communication in which the participants seek to persuade, or are persuaded; communication which is about changing or maintaining beliefs, or taking or refusing to take action on the basis of one's beliefs. . . .' " [Citations.] As speech strays further from the values of persuasion, dialogue and free exchange of ideas, and moves toward willful threats to perform illegal acts, the state has greater latitude to regulate expression. [Citation.] . . . [¶] A threat is an " 'expression of an intent to inflict evil, injury, or damage on another.' " [Citation.] *When a reasonable person would foresee that the*

13

*context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection.'* " (*Toledo*, *supra*, 26 Cal.4th at p. 233, citing to *In re M.S.* (1995) 10 Cal.4th 698, 710.)

"[I]t is clear that the type of threat satisfying the criminal threat provisions of section 422—that is, a threat 'to commit a crime which will result in death or great bodily injury to another person . . . which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat'—constitutes speech that falls outside the protection of the First Amendment." (*Toledo*, *supra*, 26 Cal.4th at p. 234.)

As detailed *ante,* we have found sufficient evidence supports that defendant's threat to the victim on its face and based on the surrounding circumstances was so " ' unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat' " to support defendant's criminal threat conviction pursuant to section 422.  (*Toledo*, *supra*, 26 Cal.4th at p. 234.)  As such, we reject that defendant's conviction violates his First or Fourteenth Amendment Rights under the United States Constitution.

# DISPOSITION

The judgment is affirmed in full.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

RAMIREZ _____
P. J.

SLOUGH _____
J.