[No. H016326. Sixth Dist. Mar. 27, 1998.]

DENNIS GUEVARA, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Biggam, Christensen & Minsloff and Donald M. Kelly for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Cheif Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Joan Killeen and Juliet B. Haley, Deputy Attorneys General, for Real Party in Interest.

Carmela F. Simoncini as Amicus Curiae.

**OPINION**

**MIHARA, J.**—The questions before us are (1) whether an adult male who knows that he is a carrier of the antibodies to the human immunodeficiency virus (HIV) and engages in an act of unprotected consensual sexual intercourse with a minor without disclosing this fact commits an aggravated assault in violation of Penal Code section 245, subdivision (a)(1) and (2) whether Penal Code section 12022.85, which imposes a three-year sentence enhancement on individuals who, knowing that they are HIV-positive,[1] have unlawful sexual intercourse (Pen. Code, § 261.5) with minor females, is unconstitutional on its face because it punishes "status" rather than conduct or denies equal protection. We conclude that petitioner should not have been held to answer on the Penal Code section 245, subdivision (a)(1) counts. We also hold that Penal Code section 12022.85 is not unconstitutional on its face.

### PROCEDURAL BACKGROUND

Petitioner was charged by complaint with four counts of unlawful sexual intercourse (Pen. Code, § 261.5, subd. (d)), one count of failing to register as a sex offender (Pen. Code, § 290) and two counts of assault "with a deadly weapon, to wit, bodily fluids, and by means of force likely to produce great bodily injury" (Pen. Code, § 245, subd. (a)(1)). The complaint further alleged that petitioner had known that he was HIV-positive at the time he had unlawful sexual intercourse (Pen. Code, § 12022.85). It was also alleged that petitioner had suffered one prior conviction within the meaning of Penal Code section 1170.12. Petitioner waived preliminary examination on all counts and allegations other than the two assault counts, and the prosecutor

---

[1] We herein refer to individuals who carry the antibodies to the human immunodeficiency virus as "HIV-positive" individuals.

and petitioner stipulated to a set of facts as the basis for the magistrate to decide whether to hold petitioner to answer on the assault counts. The stipulated facts were that "defendant had unprotected sex with the minor victim while he . . . knew he was HIV positive and did not inform the minor" and that "it was consensual sex." Petitioner's counsel argued that the magistrate should not hold petitioner to answer on the assault counts because the minor's consent vitiated any inference that "force" had been used. The prosecutor argued that petitioner's failure to inform the minor of his "HIV status" vitiated the minor's consent. The magistrate held petitioner to answer on all counts.

Petitioner was then charged by information with four counts of unlawful sexual intercourse (Pen. Code, § 261.5, subd. (d)), one count of failing to register as a sex offender (Pen. Code, § 290) and two counts of assault "with a deadly weapon, to wit, BODILY FLUIDS, and by means of force likely to produce great bodily injury" (Pen. Code, § 245, subd. (a)(1)). The information further alleged that petitioner had known that he was HIV-positive at the time he had unlawful sexual intercourse (Pen. Code, § 12022.85). It also alleged that petitioner had suffered one prior conviction within the meaning of Penal Code section 1170.12.

Petitioner made a Penal Code section 995 motion to set aside the information as to the assault counts only. He asserted that there was insufficient evidence to indicate that these offenses had been committed because (1) "consensual sex . . . precludes a finding of either force or the intent to apply it," (2) no "deadly weapon" had been utilized and (3) petitioner's actions were not "likely to result in either death or great bodily injury." The court denied the motion, but it ordered the information amended to delete the allegation that petitioner had used a "deadly weapon" after the prosecutor conceded that she was only proceeding on the theory that petitioner had committed an assault "by means of force likely to produce great bodily injury."

Petitioner also filed a demurrer and motion to dismiss seeking dismissal of the Penal Code section 12022.85 allegations on the grounds that the statute (1) imposes cruel and unusual punishment because it "unconstitutionally serves to punish defendant's status as a carrier of the HIV virus [sic]" and (2) denies petitioner equal protection in that it applies only to males and only to AIDS-infected and HIV-positive individuals rather than all carriers of infectious diseases. The court denied the motion. Petitioner filed a timely petition for a writ of mandate and/or prohibition, and this court issued an alternative writ of mandate and stayed the trial court proceedings.

ANALYSIS

## A. *Assault Counts*

The first question raised by the petition is whether an HIV-positive adult male who is aware of his HIV-positive status and has unprotected consensual sexual intercourse with a minor without disclosing his HIV-positive status may be held to answer on a charge of assault in violation of Penal Code section 245, subdivision (a)(1).

"[A] magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. . . .' " (*Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131], citations omitted.)

Petitioner asserts that there was not sufficient evidence to support the magistrate's order because there was no evidence that his act was "likely to produce great bodily injury." He argues that his stipulation to "unprotected sex" could not have supported a conclusion that "bodily fluids were exchanged." Our review is limited to deciding whether the magistrate had " 'some rational ground for assuming the possibility' " that petitioner had committed aggravated assault. (*Taylor* v. *Superior Court*, *supra*, 3 Cal.3d at p. 582.) In view of the stipulated fact that ·petitioner had engaged in "unprotected sex" with the victim, we believe that the magistrate had a rational basis for "assuming the possibility" that the victim had been thereby exposed to petitioner's bodily fluids.

However, we do find merit in petitioner's claim that there was no evidence *before the magistrate* that his bodily fluids "were likely to infect the minor with HIV." The stipulated facts contained no evidentiary basis for an inference regarding the *likelihood* that one or two individual incidents of unprotected sex between an HIV-positive male and an uninfected female would result in· transmission of HIV to the female. The magistrate did not expressly take judicial notice of any undisputed facts (Evid. Code, §§ 451, subd. (f), 452, subds. (g), (h)), but judicial notice could not fill the evidentiary void here because the likelihood that the charged acts would result in

transmission of HIV is not undisputed.[2] In order to hold petitioner to answer on the aggravated assault counts, the magistrate had to have a "rational" basis for "assuming the possibility" that petitioner's act was "likely to produce great bodily injury." The record discloses no such "rational" basis for the magistrate's implicit assumption. Consequently, the magistrate's holding order is insupportable. We will issue a writ of mandate directing the superior court to grant petitioner's Penal Code section 995 motion as to the assault counts.

### B. *Penal Code Section 12022.85 Allegations*

■ Petitioner maintains that Penal Code section 12022.85 is constitutionally invalid because it (1) violates the Eighth Amendment's prohibition against cruel and unusual punishment by "punish[ing] an individual simply because he has the misfortune of having an illness" thereby punishing "status" rather than conduct, (2) violates equal protection by punishing HIV-positive and AIDS-infected persons but not the carriers of other diseases and (3) violates equal protection because it punishes only those who have unlawful sexual intercourse with females.

Petitioner unsuccessfully challenged the enhancement allegations with a demurrer. ■ "A demurrer to a criminal complaint lies only to challenge the sufficiency of the pleading and raises only issues of law. . . . Penal Code section 1004 expressly limits demurrers to defects appearing on the face of the accusatory pleading [including] '[¶] . . . [¶] 1. If an indictment, that the grand jury by which it was found had no legal authority to inquire into the offense charged, or, if an information or complaint that the court has no jurisdiction of the offense charged therein; [¶] . . . [¶] 4. That the facts stated do not constitute a public offense; [¶] [and] 5. That it contains matter which, if true, would constitute a legal justification or excuse of the offense charged, or other legal bar to the prosecution.' " (*Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069, 1090 [40 Cal.Rptr.2d 402, 892 P.2d 1145], citations omitted.) The California Supreme Court has "assume[d]" that ". . . if a statute under which a defendant is charged with a crime is invalid, the complaint is subject to demurrer under subdivisions 1, 4 and 5 of Penal Code

---

[2]Saracco et al., *Man-To-Woman Sexual Transmission of HIV: Longitudinal Study of 343 Steady Partners of Infected Men* (No. 5, 1993) 6 J. Acquired Immune Deficiency Syndromes, 497, 500 (the annual infection rate for female partners of infected males who never used condoms was 5.7 percent); Nicolosi et al., *The Efficiency of Male-to-Female and Female-to-Male Sexual Transmission of the Human Immunodeficiency Virus: A Study of 730 Stable Couples* (Nov. 1994) 5 Epidemiology 570, 572-573 (in a study of more than 200 uninfected female partners of infected males who continued to have sexual intercourse and never used condoms, less than 10 percent of the women became infected over the more than four-year study period).

section 1004 on the ground that the court lacks jurisdiction because the statute is invalid, the facts stated do not constitute a public offense, and the complaint contains matter which constitutes a legal bar to the prosecution." (*Tobe* at p. 1091, fn. 10.) Review of a ruling on a demurrer based on the constitutional invalidity of a statute is limited to deciding the legal issue of whether the statute is unconstitutional on its face. (*Strand Property Corp.* v. *Municipal Court* (1983) 148 Cal.App.3d 882, 888 [200 Cal.Rptr. 47].)

## 1. *Status*

 Petitioner's first contention is that Penal Code section 12022.85 is unconstitutional because it "punish[es] his status as an HIV carrier . . . ." He claims that this statute is "almost identical" to a California statute criminalizing "narcotics addiction" which was held invalid by the U.S. Supreme Court in 1962. (*Robinson* v. *California* (1962) 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758].) He fails to note that *Robinson* "made it clear, however, that punishing the conduct of using or possessing narcotics, even by an addict, is not impermissible punishment for status." (*Tobe* v. *City of Santa Ana, supra,* 9 Cal.4th at p. 1105.) Penal Code section 12022.85, unlike the "narcotics addiction" statute invalidated in *Robinson,* does not criminalize the *status* of being HIV-positive because it applies only where a knowingly HIV-positive individual commits specified criminal *conduct.* As a requisite element of this enhancement is the commission of volitional criminal conduct, the enhancement does not punish "status" and is not constitutionally objectionable on this ground. (*Tobe, supra,* 9 Cal.4th at pp. 1105-1106.)

## 2. *Equal Protection*

Petitioner also asserts that Penal Code section 12022.85 violates equal protection because (1) it punishes HIV-positive and AIDS-infected persons but not the carriers of other communicable diseases and (2) subdivision (b)(2) of the statute applies only when the victim is a female and not when the victim is a male.

 " ' "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' " (*In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549].) It is often stated that "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*In re Eric J.* at p. 530, italics omitted.) The use of the term "similarly situated" in this context

refers only to the fact that " '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same' . . . ." (*In re Roger S.* (1977) 19 Cal.3d 921, 934 [141 Cal.Rptr. 298, 569 P.2d 1286], citations omitted.) "There is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups. Thus, an equal protection claim cannot be resolved by simply observing that the members of group A have distinguishing characteristic X while the members of group B lack this characteristic. The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." (*People* v. *Nguyen* (1997) 54 Cal.App.4th 705, 714 [63 Cal.Rptr.2d 173].)

### a. *Distinction by Disease*

■ Penal Code section 12022.85 enhances the punishment for certain specified sex crimes when the perpetrator knew that he or she was HIV-positive or AIDS-infected at the time of the crime. Petitioner suggests that individuals with "Hepatitis, Polio, Herpes, and many other communicable debilitating diseases" are similarly situated with respect to the purpose of this statute. To our knowledge, Penal Code section 12022.85 deals with the only incurable sexually transmitted disease which inevitably leads to death. Polio, herpes, hepatitis and other communicable diseases are either curable with treatment, not sexually transmitted or not inevitably deadly. Penal Code section 12022.85 is aimed solely at enhancing the punishment for a sex crime where the perpetrator has knowingly exposed the victim to transmission of an inevitably deadly disease. No other communicable diseases pose this same threat to sex crime victims. Consequently, we do not believe that perpetrators of sex crimes infected with other communicable diseases are sufficiently similar to HIV-positive and AIDS-infected perpetrators to merit further scrutiny on an equal protection claim. Even if we were to conclude that these two groups are sufficiently similar to merit further scrutiny and applied the highest level of scrutiny to this contention, we would conclude that *the state's compelling interest in the safety of its citizenry justifies the* distinction made by Penal Code section 12022.85. The public health threat posed by AIDS is, at this time, far more serious and widespread than the threat posed by any other sexually transmitted disease.[3]

---

[3]The costs associated with "sexually transmitted HIV infection" were approximately $6.7 billion in 1994 while the costs associated with sexually transmitted hepatitis B were only

## b. *Distinction by Gender*

Petitioner maintains that Penal Code section 12022.85, subdivision (b)(2) violates equal protection because it applies only where the victim of a Penal Code section 261.5 violation is a female and does not apply where the victim of a Penal Code section 261.5 violation is a male. We conclude that the distinction is not unconstitutional.

Penal Code section 12022.85 was enacted in 1988. (Stats. 1988, ch. 1597, § 4, pp. 5788-5789.) Subdivision (b) of Penal Code section 12022.85 lists the crimes to which the enhancement is applicable. The second crime listed is "[u]nlawful intercourse with a female under age 18 in violation of Section 261.5." Prior to 1993, Penal Code section 261.5 was gender distinct and outlawed sexual intercourse only with *females* under the age of 18. (Stats. 1970, ch. 1301, § 2, p. 2406.) In 1979, the California Supreme Court upheld the constitutionality of the gender-distinct version of Penal Code section 261.5 against an equal protection challenge on gender discrimination grounds. (*Michael M.* v. *Superior Court* (1979) 25 Cal.3d 608 [159 Cal.Rptr. 340, 601 P.2d 572].) Applying strict scrutiny to the distinction, the court held that the state's compelling interest in minimizing the "social and economic results" of the teenage pregnancies that might arise from violation of Penal Code section 261.5 necessitated the distinction made by the statute. (*Michael M.*, 25 Cal.3d at pp. 610-611.) The court explained that the distinction was supported by "the immutable physiological fact that it is the female exclusively who can become pregnant." (*Michael M.* at p. 611.) In the course of its opinion, the court rejected the defendant's claim that the law should have excluded from its ambit those who used birth control. (*Michael M.* at pp. 612-613.) *Michael M.* was subsequently upheld by the United States Supreme Court. (*Michael M.* v. *Sonoma County Superior Court* (1981) 450 U.S. 464 [101 S.Ct. 1200, 67 L.Ed.2d 437].) In 1993, the Legislature amended Penal Code section 261.5 to make it gender-neutral. (Stats. 1993, ch. 596, § 1.) Penal Code section 12022.85, subdivision (b)(2) has never been amended.

The California Supreme Court's decision in *Michael M.* reflects that the gender distinction made by Penal Code section 12022.85, subdivision (b)(2) is necessitated by a compelling state interest. It is common knowledge that the offspring of an HIV-positive or AIDS-infected mother are at great risk of being born HIV-positive or AIDS-infected. Since only females bear children, a knowingly HIV-positive or AIDS-infected male who has sexual intercourse with a minor female risks transmission of his disease to not only the

---

$156 million in 1994. (NIAID Fact Sheet, National Institute of Allergy and Infectious Diseases, National Institute of Health.)

female victim[4] but also to any offspring she may bear in the future.[5] This double threat posed by the commission of unlawful sexual intercourse by HIV-positive and AIDS-infected males on female victims reflects the existence of a compelling state interest which necessitates the distinction made by Penal Code section 12022.85, subdivision (b)(2).

## DISPOSITION

Let a peremptory writ of mandate issue directing the Santa Cruz County Superior Court to vacate its order denying petitioner's Penal Code section 995 motion and enter a new and different order granting his motion as to the Penal Code section 245, subdivision (a)(1) counts. Petitioner's request for relief from the superior court's denial of his demurrer is denied.

Wunderlich, J., concurred. Elia, Acting P. J., concurred in the judgment only.

---

[4]It has also been reported that male-to-female transmission is much more likely than female-to-male transmission. (Ickovics et al., *Women and AIDS in the United States: epidemiology, natural history, and mediating mechanisms* (1992) 11 Health Psychol. 1-16.)

[5]It has been estimated that as many as one-third to one-half of the babies born to HIV-positive mothers will be born HIV-positive. (Davis et al., *Prevalence and Incidence of Vertically Acquired HIV Infection in the United States* (Sept. 20, 1995) 274 JAMA 952; Jennings, Understanding and Preventing AIDS: A Book for Everyone (Health Alert Press 1993); AIDS Weekly (Sept. 20, 1993).)