Filed 6/9/26  P. v. West CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052303, H052584 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C2000984) |
| v. | |
| JEFFREY TY WEST, | |
| Defendant and Appellant. | |

Defendant Jeffrey Ty West was convicted by a jury of multiple sex offenses and was sentenced to an aggregate term of 231 years to life.  Six of the 231 years were imposed as enhancements under Penal Code section 12022.85,[1] which authorizes additional three-year terms of imprisonment for defendants who commit specified sex offenses "with knowledge that the [defendant] has acquired immune deficiency syndrome (AIDS) or with the knowledge that the person carries antibodies of the human immunodeficiency virus at the time of the commission of those offenses."  (§ 12022.85, subd. (a).)  West argues that the trial court violated his right to present a defense by excluding evidence that he was likely incapable of transmitting HIV when he committed the qualifying sex offenses.  He also argues the enhancement violates the United States Constitution's guaranty of equal protection under the law and its prohibition on cruel and

---

[1] Unspecified statutory references are to the Penal Code.

unusual punishment.  Finding no merit in West's contentions, we will affirm the judgment.

## I.     BACKGROUND

### A.     *The Operative Information*

In February 2021, the Santa Clara County District Attorney charged West by information with assault with intent to commit rape and oral copulation during a first degree burglary (§ 220, subd. (b); count 1), oral copulation by force (§ 287, subd. (c)(2)(A); count 2), rape by force (§ 261, subd. (a)(2); count 3), threats to commit a crime resulting in death or great bodily injury (§ 422, subd. (a); count 4), taking a vehicle with a specified prior (Veh. Code, § 10851, subd. (a); count 5), carjacking (§ 215, subd. (a); count 6), and first degree robbery of an inhabited building (§ 212.5, subd. (a); count 7).  As to counts 2 and 3, it was alleged that West engaged in the tying or binding of the victim or another person during the commission of the offense subjecting him to the alternative sentencing scheme of the One Strike law (§ 667.61, subds. (a) & (e)) and that West committed the offenses with knowledge that he had HIV or AIDS (§ 12022.85).  It was further alleged that West had two prior strike convictions (§ 1170.12) and two prior serious felony convictions (§ 667, subd. (a)(1)).

### B.     *Relevant Testimony from the Preliminary Hearing*

Kristin Walsh, M.D. testified at the preliminary hearing as a prosecution expert.  An HIV specialist for the Santa Clara County jail system and a physician at the county's HIV clinic, Walsh had been treating West, who was diagnosed with AIDS, since 2015.  According to Walsh, a person with HIV is diagnosed with AIDS if their T-cell count has fallen below 200.

Walsh testified on cross-examination that although there is no cure for HIV or AIDS, treatments are available.  Antiretroviral drugs can so reduce a person's viral load that it becomes undetectable and incapable of transmission.  The United States Centers for Disease Control and Prevention considers a viral load count of 200 to be the threshold

2

at which HIV is transmissible. West's viral load has never exceeded 200 in testing since 2014. In January 2020, about two weeks after the charged offenses, West's viral load count was 40. His HIV was thus "undetectable and untransmittable" at the time of the test.

West had reported that he had not stopped his medication for a prolonged period and that he had missed only "a couple" of doses before his incarceration. According to Walsh, someone whose viral load is consistently less than 200 would need to completely stop medication for an extended period to exceed the 200-count threshold. (Cessation of medication permits the virus to replicate.) West's second most recent test had been in June 2019, and at that time, his viral load was also less than 200. Walsh testified that if West "missed a couple of doses" sometime between his last two tests, it would have been "unlikely" that he would have had a viral load of over 200 on the date of the offense. But Walsh also testified that West "would have to miss several doses in the immediate days preceding the date in question" to have a viral load of over 200. Walsh thus opined that "[m]ost likely" West would have had an "undetectable" viral load on the date of the offense.

West's counsel argued to the magistrate that West should not be held to answer the two alleged section 12022.85 enhancements because he could not have transmitted HIV. But the magistrate disagreed, citing the plain language of the statute, and included the enhancements in the order certifying the cause to the superior court.

## C.     *The Motion to Dismiss the Section 12022.85 Enhancements*

Before trial, West moved to dismiss the section 12022.85 enhancements, arguing that at the time of the offenses, West's viral load was insufficient to transmit HIV. West argued that the enhancement was unconstitutional as applied to his case because it was void for vagueness, violated equal protection principles, and constituted cruel and unusual punishment.

The trial court denied the motion.

3

**D.** *Trial Evidence*

In January 2020, West entered N.D.'s mobile home and told N.D. that he was there to collect a debt of about $5,000 that her boyfriend owed. N.D. gave West all her savings, but West told her this was not enough. West forced N.D. to orally copulate him, and then he raped her. Before leaving with her phone, car keys, and money, West used electrical cords to tie N.D.'s hands and legs together and told her he would return to kill her if she screamed. After West left, N.D. freed herself and found that her car was missing.

Testifying on his own behalf, West denied threatening or raping N.D. When N.D. was short on money her boyfriend had told West to collect from her, N.D. agreed to have sex in return for some debt relief. West took N.D.'s car keys and phone as collateral for the balance.

The jury found West guilty of all counts.

**E.** *The Bifurcated Trial on the Enhancements and Prior Convictions*

Trial on the section 12022.85 enhancements and West's prior convictions had been bifurcated. Before trial on these sentencing issues, West again raised the constitutionality of section 12022.85 and asked to cross-examine Walsh about West's inability to transmit the HIV virus to support his anticipated request for a judgment of acquittal under section 1118.1 following the prosecution's case. The trial court declined to permit the proposed cross-examination, reasoning that (1) the constitutionality of section 12022.85 had already been litigated and decided in prior hearings, and (2) section 12022.85 had no transmissibility requirement.

Walsh testified that she began treating West as a patient in 2015 or 2016, that West has AIDS and is prescribed medicine for his condition, and that in January 2020, she and West discussed the fact that he continued to have AIDS.

As for West's prior convictions, the prosecution presented West's rap sheet and abstracts of judgment showing that he had two prior convictions for robbery.

4

The jury found true the section 12022.85 enhancements and the enhancements that West had prior serious felony convictions and two prior strikes after the bifurcated trial.

**F.    *Sentencing***

The trial court sentenced West to three consecutive terms of 75 years to life for counts 1, 2, and 3, and consecutive terms of 25 years to life on counts 4, 6, and 7.  The trial court stayed under section 654 the sentences for counts 1 and 5, though it did not orally specify a sentence on count 5.  The trial court sentenced West to two consecutive three-year terms for the section 12022.85 enhancements attached to counts 2 and 3, but struck the serious felony enhancements under section 667, subdivision (a)(1).  In total, West was sentenced to a term of 231 years to life.

Several months later, the trial court corrected an aspect of West's sentence—specifying the term imposed and stayed for count 5 as four years.

West appealed from both the original and amended judgments.

## II.    DISCUSSION

**A.    *Exclusion of Evidence of Transmissibility***

West argues that the trial court violated his due process right to a fair trial by concluding that transmissibility was irrelevant to a section 12022.85 enhancement, precluding him from introducing evidence that he was incapable of transmitting HIV at the time of the offenses.  On de novo review of West's question of statutory interpretation (see *People v. Lewis* (2021) 11 Cal.5th 952, 961), we find no error in the trial court's determination.

Section 12022.85 on its face lacks any requirement of transmissibility; the enhancement applies if a person commits an enumerated sex offense "with knowledge that the person has acquired [AIDS] or with the knowledge that the person carries [HIV antibodies]."  (§ 12022.85, subd. (a).)  As the language of the statute is plain and unambiguous, it controls.  (See *People v. Scott* (2014) 58 Cal.4th 1415, 1421 [if statutory language is clear, " ' " 'we need go no further' " ' "].)  Although West in his reply brief

5

argues that section 12022.85 should permit an affirmative defense of transmissibility, here too the statutory language admits no such exception. (Cf. *People v. Lam* (2004) 122 Cal.App.4th 1297, 1301 ["[w]hen a statute first defines an offense in unconditional terms and then specifies an exception to its applicability, the exception is generally an affirmative defense to be raised and proved by the defendant"].) It is " 'not [a judicial] function … to add language or imply exceptions to statutes passed by the Legislature.' " (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1063.)

Because transmissibility is irrelevant to a violation of section 12022.85, the trial court did not err in excluding evidence about West's ability to transmit HIV. (Evid. Code, §§ 350 ["[n]o evidence is admissible except relevant evidence"], 210 [relevant evidence is evidence having "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].) And because the application of ordinary rules of evidence—which includes the exclusion of irrelevant evidence—does not infringe on a defendant's constitutional rights to due process or to a fair trial (*People v. Prince* (2007) 40 Cal.4th 1179, 1229; *People v. Gonzales* (2019) 34 Cal.App.5th 1081, 1090 [exclusion of irrelevant evidence does not impair the "due process right to present a defense"]), we find no merit in West's claim that the exclusion of evidence implicated his constitutional rights. A "[d]efendant's entitlement to due process of law does not encompass a right to any process of his own choosing, including the right to introduce irrelevant evidence …." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1249.)

**B.      *Equal Protection***

Under the Fourteenth Amendment of the United States Constitution, a state cannot "deny to any person within its jurisdiction the equal protection of the laws." " 'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' " (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).) As he did in the trial court, West argues that section 12022.85 violates

6

equal protection principles. Although West characterizes his challenge as both a facial and as-applied challenge, West does not meaningfully argue that the law violates equal protection principles " 'in the *generality* or *great majority* of cases' " as required for a facial challenge. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 388.) Rather, his argument " '*contemplates analysis of the facts of a particular case or cases*' " to determine whether under those circumstances, a statute is constitutional. (*In re Taylor* (2015) 60 Cal.4th 1019, 1039.) West's contention is essentially that section 12022.85 violates equal protection principles as applied to a subset of defendants like him—those who despite carrying HIV pose a negligible risk of transmitting the virus—as the statute does not require transmissibility as an element.[2]

Following the California Supreme Court's direction in *Hardin*, "[t]he … pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Hardin*, *supra*, 15 Cal.5th at pp. 850–851; see *id*. at p. 849 [dispensing with traditional threshold question of whether a classification unequally affects two or more similarly situated groups].)

When the challenged difference in treatment is either based on a suspect classification or involves a fundamental right, the state's asserted justification is " ' " 'subject[] … to strict scrutiny.' " ' " (*People v. Chatman* (2018) 4 Cal.5th 277, 288.) " ' " 'Under the strict standard applied in such cases, *the state* bears the burden of

---

[2] To the extent West nonetheless asserts that section 12022.85 is facially unconstitutional for the same reason, "[i]f [a] defendant cannot demonstrate that the law is unconstitutional as applied to him and others similarly situated, he has necessarily failed to demonstrate that the law is unconstitutional on its face." (*People v. Williams* (2024) 17 Cal.5th 99, 121 (*Williams*).) Because we find the statute does not violate principles of equal protection as applied to him, West's facial challenge necessarily fails.

7

establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose.' " ' " (*Ibid.*)[3]

But if the challenged statute does not concern a suspect classification or fundamental right, "the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' [Citations.] A court applying this standard finds 'a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose.' " (*Hardin*, *supra*, 15 Cal.5th at p. 847.) The party challenging the law bears the burden to establish a lack of rational relationship. (*People v. Cannon* (2025) 18 Cal.5th 497, 517.)

We review de novo West's claim that the statute denies him equal protection under the Fourteenth Amendment. (*In re Murray* (2021) 68 Cal.App.5th 456, 462–463.)

### 1. *Rational Basis or Strict Scrutiny*

West contends that we must apply strict scrutiny to section 12022.85 because it impairs his fundamental right to liberty and disadvantages the "discrete and historically stigmatized class of HIV[-positive] individuals." Neither contention has merit, and we conclude that rational basis review applies.

First, because section 12022.85 serves only to lengthen a criminal punishment to which a convicted defendant is already subject, it does not of itself implicate a fundamental right. It has long been established that "[a] defendant … 'does not have a fundamental interest in a specific term of imprisonment or in the designation a particular crime receives.' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838 (*Wilkinson*) [rational basis review applies to challenge to statute criminalizing battery on a custodial officer];

---

[3] In cases involving classifications based on " 'sex or illegitimacy,' " the United States Supreme Court applies a third standard—intermediate scrutiny—but neither party alleges that intermediate scrutiny is warranted here. (*Hernandez v. City of Hanford* (2007) 41 Cal.4th 279, 299, fn. 12.)

8

*People v. McKee* (2010) 47 Cal.4th 1172, 1223 (conc. & dis. opn. of Chin, J.) ["*Wilkinson* teaches that we cannot simply say that a classification is subject to strict scrutiny merely because it touches on personal liberty"].) Because a prerequisite to a section 12022.85 enhancement is a defendant's commission of certain enumerated sex offenses, a defendant is already subjected to a deprivation of his or her liberty irrespective of the enhancement.

Application of the enhancement thus does not deprive a defendant of liberty but governs "the duration of that deprivation." (*People v. Barner* (2024) 100 Cal.App.5th 642, 664 [rational basis review applies to differential treatment of insanity acquittees subject to life or determinate terms of commitment].) And because " ' " ' "the power to define crimes and fix penalties is vested exclusively in the legislative branch," ' " ' " we apply rational basis review. (*Barner*, at p. 664, citing *People v. Farley* (2009) 46 Cal.4th 1053, 1119; *People v. K.P.* (2018) 30 Cal.App.5th 331, 343 (*K.P.*) [rational basis review applies to challenge to firearm enhancements for insanity acquittees]; *People v. Alvarez* (2001) 88 Cal.App.4th 1110, 1116 (*Alvarez*) [rational basis review applies to firearm enhancement's differential treatment between offenders who commit crimes with firearms and those who do not]; *Hardin*, *supra*, 15 Cal.5th at pp. 847–848 [rational basis review applies to challenge to statute prescribing youth offender parole hearings under § 3051].)[4]

West's reliance on *People v. Olivas* (1976) 17 Cal.3d 236 does not advance his argument for strict scrutiny. True, in *Olivas*, the California Supreme Court applied strict scrutiny review to a defendant's equal protection challenge to a statute that permitted the trial court to sentence certain misdemeanants between the ages of 16 and 21 to the California Youth Authority for a longer term than could have been imposed for the same

_____

[4] In his reply brief, West mischaracterizes *Alvarez* as finding that strict scrutiny applies to firearm enhancements, but *Alvarez* expressly held that "the rational basis standard applies." (*Alvarez*, *supra*, 88 Cal.App.4th at p. 1116.)

offense in jail. (*Id.* at pp. 250–251.) But our high court has since cautioned that *Olivas* should be narrowly read as " 'requir[ing] only that the boundaries between the adult and juvenile criminal justice systems be rigorously maintained.' " (*Wilkinson, supra,* 33 Cal.4th at pp. 837–838.)[5]

Nor does HIV-positive status constitute a suspect classification under equal protection principles, merely because it has been treated as a disability for purposes of statutory civil rights. (See *Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 529 ["HIV is a disability within the meaning of the Unruh Civil Rights Act [(Civ. Code, § 51 et seq.)]"].) A statutory classification is considered "suspect" if the characteristic is: " '(1) … based upon an "immutable trait"; (2) "bear[s] no relation to [a person's] ability to perform or contribute to society"; and (3) … associated with a "stigma of inferiority and second class citizenship," manifested by the group's history of legal and social disabilities.' " (*In re Marriage Cases* (2008) 43 Cal.4th 757, 841.)[6] But courts have routinely held that people with disabilities are not a suspect class for purposes of an equal protection analysis. (*City of Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 442 ["mental retardation" is not a "quasi-suspect classification calling for a

___

[5] West relies on *People v. Jacobs* (1984) 157 Cal.App.3d 797 and *People v. Williams* (1983) 140 Cal.App.3d 445 for the proposition that strict scrutiny should apply to sentencing enhancements, but both cases were decided before the California Supreme Court in *Wilkinson* limited the reach of *Olivas* and cautioned against applying strict scrutiny whenever a statute authorizes different sentences for comparable crimes. (See *Wilkinson, supra,* 33 Cal.4th at p. 837.) More recent cases have applied rational basis review to statutes that concern the length of a defendant's probable incarceration. (See, e.g., *K.P., supra,* 30 Cal.App.5th at p. 343; *Hardin, supra,* 15 Cal.5th at p. 839.)

[6] Immutability is not "invariably required" as sexual orientation and religion are suspect classifications under California case law. (*In re Marriage Cases, supra,* 43 Cal.4th at p. 841.) But aside from the "canonical" examples of a suspect class like "race, sex, and alienage," the United States Supreme Court has yet to recognize a new constitutionally protected class in over 40 years. (*United States v. Skrmetti* (2025) 605 U.S. 495, 549, 548 (conc. opn. of Barrett, J.).)

more exacting standard of judicial review"]; *Adoption of Kay C.* (1991) 228 Cal.App.3d 741, 753–754 [those with developmental disabilities or mental illnesses not a suspect class]; *Cole v. Superior Court* (2024) 104 Cal.App.5th 1280, 1292 ["developmentally disabled are not a suspect class"].)  And other jurisdictions have applied rational basis review in equal protection challenges to laws criminalizing the transmission of HIV. (*State v. Batista* (Ohio 2017) 91 N.E.3d 724, 729 [applying rational basis review to claim that Ohio law that criminalizes engaging in sexual conduct with another person without disclosure of HIV status violates equal protection principles].)

Indeed, West cites no cases, nor have we found any, that have treated people with medical conditions as a suspect class.  We accordingly apply rational basis review to West's claims.

### 2. *West's As-Applied Challenge*

West concedes that the state has a compelling interest in preventing the transmission of HIV.  (See *People v. McVickers* (1992) 4 Cal.4th 81, 88–89 ["[t]hat AIDS poses a major threat to the public health and safety is beyond debate"]; *John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1199 (*John B.*) [state has a "compelling interest in preventing the spread of AIDS, a communicable and dangerous disease"]; *Guevara v. Superior Court* (1998) 62 Cal.App.4th 864, 872 (*Guevara*) [state has "compelling interest in the safety of its citizenry" by reducing spread of HIV].)  He contends, however, that section 12022.85 violates equal protection principles because it does not require any risk of HIV transmission.  Absent a risk of transmission, West argues that any legitimate state interest in preventing the spread of HIV disappears.

But even assuming that the basic premise of West's assertion is true—that absent a risk of transmission, there is no legitimate state interest in imposing harsher penalties on those who know their HIV-positive status but still commit certain sex offenses—West has not shown that he is within the subset of HIV-positive individuals who were incapable of transmitting the virus when the offense was committed.  West cites to

11

medical studies in his opening brief for the proposition that it "takes approximately three months of restarting treatment" to regain an undetectable viral load if treatment was previously ceased, and he argues that based on these studies his low viral load—measured about two weeks after the offense—establishes he could not have transmitted the virus when he sexually assaulted N.D. Yet the reports cited by West were never presented in the trial court, are not a part of the appellate record, and West does not request judicial notice of any of them. Thus, we do not consider them on appeal. (*In re Bailey* (2022) 76 Cal.App.5th 837, 860 [factual matters not a part of the appellate record will not be considered]; *People v. Szeto* (1981) 29 Cal.3d 20, 35 [reviewing court does not consider materials outside the record of appeal]; *People v. Waidla* (2000) 22 Cal.4th 690, 703, fn. 1 ["[a]n appeal is 'limited to the four corners of the [underlying] record on appeal' "].)[7]

Here, Walsh testified at the preliminary hearing that West was "[m]ost likely" unable to transmit the virus when he assaulted N.D. Far from unequivocally stating that West could not transmit the HIV virus, Walsh's factual opinion was predicated on West's self-report that he had only missed a "couple" of doses of medication before his recent arrest. Her opinion thus rested on the assumption that Walsh accurately recounted how many doses he missed and when he missed them. At best, like Walsh, the evidence suggests that West was unlikely to have transmitted the HIV that is always present in his system.

So West's as-applied challenge is more properly framed as whether application of section 12022.85 to defendants like him—who *likely* were unable to transmit the virus at

---

[7] West cites to *Williams*, *supra*, 17 Cal.5th 99 for the proposition that reviewing courts commonly consider extrarecord scientific evidence in determining whether a rational relationship exists for the Legislature's differential treatment of different groups. But it is unclear whether the scientific reports discussed in *Williams* were a part of the appellate record or whether the parties properly requested that the court take judicial notice of them.

the time of the offense—bears a rational relationship to a legitimate state interest. (See *Hardin*, *supra*, 15 Cal.5th at p. 847.) Not, as West argues, whether application of the enhancement to a person who presents *no risk* of transmission violates equal protection principles. West himself concedes that the state bears a legitimate interest in reducing the spread of HIV. In fact, this court in *Guevara* held that "the state's compelling interest in the safety of its citizenry [would] justif[y]" the enhancement even if strict scrutiny were to apply. (*Guevara*, *supra*, 62 Cal.App.4th at p. 872.)[8] A legitimate state interest persists even in cases like West's where there is evidence suggesting that it was improbable (though not impossible) for him to transmit HIV. (See, e.g., *John B.*, *supra*, 38 Cal.4th at p. 1195 ["low risk of transmission is insufficient to relieve the infected individual of a duty" of care for a cause of action of negligent transmission of HIV].)

West also argues that there is no rational basis for section 12022.85 because the enhancement punishes only those HIV-positive individuals who *know* that they are HIV-positive, exempting from the enhancement those who are unaware they are HIV-positive. (§ 12022.85, subd. (a) [enhancement imposed when a person "with knowledge" that he or she carries HIV and commits certain specified sex offenses].) West claims that offenders who are unaware of their HIV-positive status pose a greater risk of transmission, pointing to Senate Bill No. 239 (2017–2018 Reg. Sess.) (Senate Bill No. 239), which amended and repealed several statutes that criminalized the intentional spread of HIV. As noted by West, Senate Bill No. 239's author expressed that it was prudent to reduce punishment for intentional HIV transmission because enhanced treatments are available for those who are HIV-positive and harsh penalties for

_____

[8] West reads *Guevara* narrowly as deciding only that individuals with other sexually transmitted diseases were *not* similarly situated to those who are HIV-positive. But *Guevara* did not stop at the similarly-situated requirement: *Guevara* weighed in on the justification for the statute as an alternative basis for rejecting the defendant's equal protection argument. (*Guevara*, *supra*, 62 Cal.App.4th at p. 872.)

intentional transmission may deter both testing and disclosure. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 239 (2017–2018 Reg. Sess.) Mar. 28, 2017, p. 5.)

But Senate Bill No. 239 did not amend section 12022.85, and its legislative history makes clear that this was intentional. The Senate Committee on Public Safety observed in its analysis, "This bill does not change the existing law that imposes a three-year sentence enhancement if a person commits specified sex crimes while being HIV-positive." (Sen. Com. on Public Safety, Analysis on Sen. Bill No. 239, *supra*, p. 6.) That the Legislature chose to lessen punishment in some circumstances for intentional HIV transmission—for example, for those engaging in noncriminal sexual conduct[9]— does not render it irrational for the Legislature to enhance the punishment for a perpetrator's commission of sexual assault when HIV positive.

We do not question that advances in science and medicine have reduced the fatality of AIDS, or that the use of antiretroviral drugs can lessen the risk of transmissibility, as testified by Dr. Walsh. (See *John B.*, *supra*, 38 Cal.4th at p. 1195.) But there is no cure for HIV once contracted, and it is a lifelong condition that would require management to prevent AIDS. The Legislature could rationally conclude that those who commit sex offenses with knowledge of their HIV status merit additional punishment for compounding the trauma to their victims by exposing the victim to HIV and the associated fear of developing AIDS. After all, those who commit sex offenses knowing that they carry the virus make the conscious decision to risk spreading the virus.

___

[9] In part, Senate Bill No. 239 added Health and Safety Code section 120290, which makes it a misdemeanor for a defendant to intentionally transmit an infectious or communicable disease, and repealed a former law that made exposure to HIV by engaging in unprotected sexual activity punishable in prison for three, five, or eight years (former Health & Saf. Code, § 120291, subd. (a)). The amendments to the law essentially rendered intentional HIV transmission on par with intentional transmission of other communicable diseases, defined as "a disease that spreads from person to person, directly or indirectly, that has significant public health implications." (Health & Saf. Code, § 120290, subd. (e)(2).)

14

(See *Hardin*, *supra*, 15 Cal.5th at p. 864 [rational basis for Legislature to exclude youths convicted of special-circumstance murder, "an offense deemed sufficiently culpable that it merits society's most stringent sanctions"].)

And to the extent West argues that section 12022.85 is out of step with the current science, it is the Legislature's role to define crimes and affix punishment. (See *People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1385.) Senate Bill No. 239's enactment suggests that the Legislature intended to reduce certain penalties for HIV transmission, but the Legislature can properly take reforms " ' "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." ' " (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 488.)

Finally, absent a risk of transmission, West claims there is no cognizable risk of trauma to the victim. But—as even in West's case—it is difficult to determine whether a defendant who is HIV-positive was able to transmit the virus when he or she committed the underlying offense. In many instances, the time between the commission of an offense and a defendant's apprehension may render it impossible to conclusively determine transmissibility. And even an assurance that a perpetrator was "most likely" unable to transmit the virus can cause harm to a victim, who may experience fear and trepidation from an unlikely—though possible—exposure to HIV.[10]

---

[10] West argues that abstract emotional fear from a potential HIV exposure cannot justify section 12022.85, citing to *Macy's California, Inc. v. Superior Court* (1995) 41 Cal.App.4th 744. In *Macy's*, the reviewing court affirmed summary adjudication of a plaintiff customer's claim for negligent infliction of emotional distress after pricking herself with a hypodermic needle left in the pocket of a jacket for sale, absent "detrimental change to [plaintiff's] body." (*Id.* at p. 757.) But *Macy's* is distinguishable as a private civil action for compensatory damages, where there was no evidence that the needle at issue or the person who left it in the jacket had been exposed to the HIV virus or any infectious agent. (*Id.* at p. 747.) Our inquiry is limited to whether sexual assault by a person carrying a sexually communicable disease rationally justifies enhanced punishment.

15

As there is a rational basis for section 12022.85's application to individuals who most likely cannot transmit HIV, West's as-applied challenge fails. (See *Hardin*, *supra*, 15 Cal.5th at p. 847.) And because his as-applied challenge fails, his facial challenge to section 12022.85 likewise fails. (*Williams*, *supra*, 17 Cal.5th at p. 120.)

C.      *Cruel and Unusual Punishment*

We review de novo West's argument that section 12022.85 constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution. (See *In re Taylor*, *supra*, 60 Cal.4th at p. 1035 [reviewing court reviews constitutional claims de novo]; *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1474.) We find no constitutional infirmity. Contrary to West's claim, section 12022.85 does not punish HIV-positive individuals for their status in carrying the virus; the enhancement applies only to HIV-positive individuals who, knowing that they carry the virus, commit a sex offense.

Although "many other constitutional provisions address what a government may criminalize and how it may go about securing a conviction, the Eighth Amendment's prohibition against 'cruel and unusual punishments' focuses on what happens next. That Clause 'has always been considered, and properly so, to be directed at the method or kind of punishment' a government may 'impos[e] for the violation of criminal statutes.' " (*City of Grants Pass v. Johnson* (2024) 603 U.S. 520, 541–542 (*Grants Pass*).)

The Eighth Amendment has been interpreted to prohibit punishing an individual based on status; for example, criminal liability cannot be imposed on someone merely for "having the disease of addiction." (*People v. Kellogg* (2004) 119 Cal.App.4th 593, 601 (*Kellogg*), citing *Robinson v. California* (1962) 370 U.S. 660, 666–667 (*Robinson*).) But the United States Supreme Court has recently cautioned against a broad application of such precedent. (See *Grants Pass*, *supra*, 603 U.S. at p. 549 [suggesting that *Robinson* "sits uneasily with the [Eighth] Amendment's terms, original meaning, and [the United States Supreme Court's] precedents"].) And this court in *Guevara* distinguished

punishment of a defendant's status from punishment of the defendant's volitional criminal conduct in rejecting a claim identical to the one raised by West—that section 12022.85 punishes status. (*Guevara*, *supra*, 62 Cal.App.4th at p. 871.) We concluded in *Guevara* that because "a requisite element of this enhancement is the commission of volitional criminal conduct, the enhancement does not punish 'status' and is not constitutionally objectionable on this ground." (*Ibid.*)

We see no reason to depart from *Guevara*, and West's arguments to the contrary are unpersuasive. He claims that *Guevara*'s holding is erroneous because a defendant's actus reus underlying a section 12022.85 enhancement is already punishable under the relevant statutes criminalizing the enumerated sex offenses, rendering section 12022.85 a punishment solely based on HIV-positive status. But the fact that sex offenses are already punishable under relevant statutes does not by itself erase section 12022.85's requirement that a *criminal offense* must first be committed before the enhancement applies. Nor is there authority to support West's contention that an enhancement needs an actus reus separate and apart from the substantive crime. "Provisions describing substantive crimes … generally define criminal *acts*" whereas enhancement provisions "do not define criminal acts; rather, they increase the punishment for those acts. They focus on *aspects* of the criminal act that are not always present and that warrant additional punishment." (*People v. Ahmed* (2011) 53 Cal.4th 156, 163.) And here, the aspect of the enumerated sex offense that warrants additional punishment is the perpetrator's commission of an offense with knowledge of his or her HIV-positive status.[11]

---

[11] In his reply brief, West characterizes section 12022.85 as a "status enhancement"—one related to the status of the offender, like prior prison term enhancements, not the circumstances of the offense—which should apply only once to an aggregate sentence. (*People v. Edwards* (2011) 195 Cal.App.4th 1051, 1057, 1060.) Not so. As we have explained, what section 12022.85 punishes is not the mere status of being HIV-positive but a circumstance of each qualifying offense—the defendant's choice to

Thus under *Robinson*, *supra*, 370 U.S. 660, section 12022.85 passes constitutional muster. West's Eighth Amendment claim must therefore be rejected. (*Guevara*, *supra*, 62 Cal.App.4th at p. 871; see also *Kellogg*, *supra*, 119 Cal.App.4th at p. 602 [misdemeanor disorderly conduct by public intoxication does not punish status as the offense punishes not the condition of being a homeless alcoholic but the conduct of posing a safety hazard].)

## III.   DISPOSITION

The judgment is affirmed.

---

disregard knowledge of a factor that can exacerbate each offense's risk of physical or emotional harm to the victim.

_____

LIE, J.

WE CONCUR:

_____

GROVER, Acting P. J.

_____

WILSON, J.

*People v. West*
H052303, H052584